[Crim. No. 4984.   Third Dist.   Apr. 14, 1969.]

In re ROBERT B. WILKERSON on Habeas Corpus.

Lloyd H. Riley, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Nelson P. Kempsky, Deputy Attorneys General, for Respondent.

PIERCE, P. J.—Petitioner Wilkerson is serving a five years to life sentence in Folsom Prison. He is "wanted" in New Jersey to serve the unexpired portion of a sentence after

a revoked parole. He sought transfer[1] to the authorities in New Jersey.[2] Under New Jersey law they declined to accept Wilkerson unless and until he had either been paroled or discharged in California. The gist of Wilkerson's petition to this court is that we command the California Adult Authority to grant him a parole (so that New Jersey will accept him), to which parole he claims to be entitled and which, he argues, would have been granted but for the existence of two allegedly invalid prior convictions. These were not included as ''priors'' in his California sentence. The Adult Authority is not regarding them as a part of his sentence but is concededly considering them as a part of his social history in its periodical hearings as a part of the process by which it determines Wilkerson's eligibility for parole. We have determined that no facts before us show an abuse of discretion by the Adult Authority. Our powers end with that determination. There can be no proper basis to make a factual determination of Wilkerson's contention that two of his several prior convictions were invalid because he did not have, was not offered and did not waive counsel. Under circumstances which we will relate it would be superfluous were we to attempt to do so.

Petitioner, represented by counsel, was convicted in Los Angeles County in April 1963 of first degree (armed) robbery upon a plea of guilty.[3] He had suffered previous felony convictions in Illinois and New Jersey. These prior convictions had originally been charged. They were dismissed before plea. Wilkerson was sentenced to state prison for the term prescribed by law. The term for first degree robbery is from five years to life. (Pen. Code, §§ 213, 671.)

Wilkerson was born in 1924. In 1940 in Illinois, at age 16,

[1]He petitioned the Superior Court of Monterey County for that purpose. A writ of habeas corpus was directed to that end in December 1965.

[2]The term in New Jersey under the laws of that state is consecutive to the term he is now serving in California. Therefore, while serving his sentence in California he receives no credit in New Jersey, but if he were to be transferred to serve his sentence to New Jersey that time served would be credited on his California sentence. He was entitled to have California offer transfer under the *Stoliker* rule. (*In re Stoliker* (1957) 49 Cal.2d 75 [315 P.2d 12]; *In re Satterfield* (1966) 64 Cal.2d 419 [50 Cal.Rptr. 284, 412 P.2d 540].)

[3]Wilkerson held up a market. He pointed an automatic pistol at the manager of the store and threatened to shoot him unless another employee opened the safe. The employee complied. Wilkerson took $2,700 in cash and checks. Thereafter he was apprehended when his car left the road and crashed. Most of the stolen money was recovered. He had consumed a bottle of vodka. At the time of the robbery he was out of work but had been offered another job at his trade—that of typesetter.

he was sentenced to a 90-day jail term for driving an automobile without the owner's consent. In 1943 in Illinois, at age 18, he pleaded guilty and was sentenced for one year to life on two counts of armed robbery. He told the Probation Officer of Los Angeles County these robberies were of a clothing store and a gas station. After serving three years and three months he was paroled to the United States Army. He was later honorably discharged from the army. In March 1949 he was charged in New Jersey with breaking and entering to commit larceny. He was convicted and placed upon probation.[4] In March 1950 in New Jersey (when Wilkerson was 36) he was charged, pleaded guilty and sentenced for two counts of armed robbery. Sentences were for from 9 to 12 years. They were to run consecutively. Wilkerson's explanation of these offenses: "He was out of employment and things got bad." The records are silent as to whether petitioner was represented by counsel, or was offered counsel, or waived counsel. Wilkerson served seven years, seven months and twenty days in a New Jersey state prison. He was paroled in October 1967 and came to California. Parole was revoked after commencement of the California sentence which he is now serving.

On April 30, 1963, Wilkerson began serving his term at the California Institution for Men (Chino). After a year there he was evaluated for transfer to the main CIM program. Upon review this recommendation was disapproved. He was transferred to the Correctional Training Facility (CTF) at Soledad in August 1964. On October 6, 1964, he first appeared before the Adult Authority. The evau1ation of the staff representative included a report of Wilkerson's statement: "I do not feel as I am a criminal, except that I commit crimes." Regarding the Los Angeles offense he is stated to have said: "Was drinking heavily." "Claims a blackout, but next day he did remember some facts, when they were told to him." Wilkerson's next appearance before the Adult Authority was October 6, 1965. Comments include: "Panel noted inmate was a 3rd termer and had committed several robberies." He was told of the seriousness of his crimes; he stated he realized his difficulties but felt he was ready for release.

In April 1966 petitioner was again considered for transfer to the CIM program. Again this was recommended. His "outstanding conduct" was mentioned. The recommendation was

---

[4] He informed the Los Angeles County probation officer that this was a "bum rap." It is the only one of several felonies he has denied.

denied with the statement: "A 3rd term robber with an out of state hold does not meet criteria for CIM." In April 1967 petitioner was transferred to the California Conservation Center at Susanville.

Meanwhile, Wilkerson had sought and obtained a writ from the Monterey Superior Court, had been offered to and declined by the State of New Jersey for the reasons hereinbefore outlined. Also a petition for a writ of habeas corpus to the Court of Appeal, First Appellate District, was denied in March 1966.[5]

Wilkerson appeared before the Adult Authority again on October 10, 1967. The staff representative's notes include an attitude statement by the prisoner: "3rd time robber who claims he really 'isn't a robber.' "

It appears that rejection for probation on the latter occasion caused a change for the worse in his beavior; this to the extent that the supervisor at Susanville requested his transfer. He was sent to Folsom Prison in February 1968.

It is unnecessary that we examine the contention of the petition that at neither of the two challenged proceedings, (1) the armed robbery conviction (on two counts) in January 1943, nor (2) the armed robbery conviction (on two counts) in New Jersey in March 1950, did he have or waive an attorney. Nor do we find it necessary to pass upon the contentions of the Attorney General that the allegations of the petition are inadequately pleaded.[6] We pause to observe, however, that the laws of both Illinois and New Jersey called for the appointment of counsel for indigents charged with a crime of the seriousness of armed robbery. (*People* v. *Morris* (1964) 30 Ill.2d 406 [197 N.E.2d 433, 435]; *People* v. *Kurant* (1928) 331 Ill. 470 [163 N.E. 411, 414-415]; *State* v. *Rush* (1966) 46 N.J. 399 [217 A.2d 441]; *State* v. *Horton* (1961) 34 N.J. 518 [170 A.2d 1].) There is also in the record the affidavit of the clerk of the judge who presided at the New Jersey proceedings. It includes: "Judge Morris [now deceased] always

[5]Petitioner mentions subsequent writ petitions to the federal district court and to the Sacramento Superior Court. Both were denied.

[6]Since the original petition was filed, petitioner has submitted a "Supplement to Traverse" with petitioner's affidavit averring quite explicit and grim statements of his denial of even elementary pre-*Gideon* v. *Wainwright* (372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]) entitlement to counsel in both Illinois and New Jersey. In the latter state, he avers: "I was beaten severely the night of my arrest and during my confinement at the City Jail."

offered to appoint counsel to represent any indigent defendant charged with the crime of robbery. Before permitting such a defendant to enter a plea of guilty to a charge of robbery Judge Morris would require a knowing and intelligent waiver of the right to counsel.''

The reason we need not consider the question whether the prior convictions were obtained constitutionally are: the robberies themselves are, as stated, a part of Wilkerson's social history—a part which he not only has not denied but has repeatedly affirmed; they were not charged as ''priors''; he has not been declared an habitual criminal; they are not being considered by the Adult Authority for the purpose of fixing his maximum sentence; the consideration being given these robberies while affecting Wilkerson's qualifications as a desirable risk for parole does not directly relate to his legal eligibility for parole.

It is the position of petitioner that the Adult Authority is affording him improper or no consideration. Its conduct is described as ''arbitrary and capricious.'' If that were so, the law is well established that the courts could and would require it to afford proper consideration to applications for term-fixing or parole. (*In re Streeter* (1967) 66 Cal.2d 47, 51 [56 Cal.Rptr. 824, 423 P.2d 976].) In *Streeter* cases are cited in which the Adult Authority has been directed to exclude illegal sentences or use of an inapplicable statute in its consideration of *eligibility* (as distinct from fitness) for parole.

The Adult Authority, however, has very broad duties and responsibilities and exercises a wide discretion in the administration of its powers. By the enactment of the Indeterminate Sentence Law in 1917 (Stats. 1917, ch. 527, pp. 665-666) the Legislature placed ''emphasis upon the reformation of the offender. . . . [It sought] to make the punishment fit the criminal rather than the crime.'' (*In re Lee* (1918) 177 Cal. 690, 692 [171 P. 958].) In creating the Adult Authority in 1944 (Stats. 1945, Third Ex. Sess. 1944, ch. 2, p. 15) the Legislature expressed a manifest intent to place the fixing of terms of sentences of state prison inmates in a board of experts. It is stated in *In re Schoengarth* (1967) 66 Cal.2d 295 [57 Cal.Rptr. 600, 425 P.2d 200], on page 300: ''. . . While a prisoner eligible for parole has the right to apply therefor and to have his application duly considered, he has no right to a parole at any fixed time, or at all; the decision to

grant or deny parole is committed entirely to the judgment and discretion of the Adult Authority. [Citations.] 'In determining whether the privilege of parole shall be granted a prisoner, that authority is not guided solely by the good conduct of the prisoner while incarcerated. The nature of his offense, his age, his prior associations, his habits, inclinations and traits of character, the probability of his reformation *and the interests of public security* are all taken into consideration.' [Citation.]'' (Italics ours.)

█ It is the function of the Legislature to fix and of the courts to interpret and determine the constitutionality of the laws fixing a prisoner's maximum sentence and eligibility for parole. But it is the exclusive function of the Adult Authority to make discretionary judgments as to whether and when an eligible prisoner shall be granted parole or discharged within the limits fixed by law. As long as it can be said that the Adult Authority has not abused that broad discretion, it would be a supererogation of power by the courts to interfere. █ And it is not reasonably arguable that a body with exclusive power to determine whether or when it is in the public interest that a prisoner be returned to society lacks power to consider his social history. It does have that power. In *In re Streeter, supra,* 66 Cal.2d 47, the facts were quite similar to the facts here (except that there one of the "priors" had been charged). The opinion states that the circumstances of the case did not justify the court's examination of the petitioner's contentions of unconstitutionality; that "the prior convictions simply form a part of the comprehensive body of material on the basis of which the Adult Authority's 'entire discretion' as to term-fixing and parole is to be exercised." (*Id.,* pp. 50-51.) In *In re Harris* (1947) 80 Cal.App. 2d 173, the court states at page 178 [181 P.2d 433]: "In determining the fitness of a man as a parole risk, many things may be considered by the parole authority. Among these are his life history, his habits, his previous associates *and of the greatest importance, his crime record.*"

█ We reach the conclusion that the Adult Authority in this matter in considering Wilkerson's crime record has not attempted to relate it to his *eligibility* for parole. It is considering it solely as a factor in determining his *fitness* for parole. Above we have spelled out Wilkerson's social history as disclosed by the record in what may have seemed to have reached garrulity. Our purpose was to demonstrate why there has been no abuse of discretion here. The record speaks for itself.

The Adult Authority cannot compel the State of New Jersey to accept Wilkerson. (*In re Tomlin,* 241 Cal.App.2d 668, 669 [50 Cal.Rptr. 805], hear. den.)

The order to show cause is discharged. The petition for a writ of habeas corpus is denied.

Regan, J., and Bray, J.,* concurred.

A petition for a rehearing was denied May 8, 1969, and petitioner's application for a hearing by the Supreme Court was denied June 11, 1969.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.