[Crim. No. 14419. First Dist., Div. One. Sept. 17, 1975.]

In re HERBERT RAY TROGLIN on Habeas Corpus.

**COUNSEL**

Herbert Ray Troglin, in pro. per., and Benjamin R. Winslow, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Martin S. Kaye, Deputy Attorneys General, for Respondent.

## OPINION

ELKINGTON, J.—Troglin, who had suffered five prior felony convictions, and his wife opened a savings account under the name of her employer, a physician. She then intercepted checks payable to the doctor and deposited them in the account, after which the money was withdrawn by Troglin who signed the doctor's name on the withdrawal slips. As a result Troglin was charged with grand theft (Pen. Code, §§ 484, 487, 489), conspiracy to commit grand theft (Pen. Code, § 182) and 17 counts of forgery (Pen. Code, § 470).

A plea bargain was thereafter entered into, under which it was agreed that 16 of the 17 forgery charges would be dismissed, and that Troglin's prior felony convictions would not be pleaded or proved. On his part Troglin agreed to plead guilty to the grand theft and conspiracy to commit grand theft charges, and to one of the forgery charges.

Another condition of the bargain was that the People would "make no recommendations whatsoever with regard to sentencing, either to the Probation Department, the Judge or anyone else that has anything to do with the sentencing," and further that the sentences on the three charges to which he pleaded guilty *"can run either concurrent or consecutively as the Judge deems proper under the circumstances as he sees them."* (Our italics.)

Following Troglin's agreed guilty pleas, the trial court sentenced him to state prison on each of the three counts, ordering that each of the sentences run concurrently with the others.

Troglin's "Cumulative Case Summary," used by the Adult Authority, designates him as a "6th Termer." His minimum prison term eligibility, and "minimum eligible parole date," however, are carried on the records as those of a prison inmate without prior felony convictions.

Troglin has petitioned this court for a writ of habeas corpus.

He first contends that by his three concurrent sentences, he is being subjected to multiple punishment in violation of Penal Code section 654, and as proscribed by *People* v. *Diaz,* 66 Cal.2d 801, 806 [58 Cal.Rptr. 729, 427 P.2d 505].

Such multiple punishment occurs when the defendant is sentenced, even though the sentences are to run concurrently, for two or more

offenses committed with a single criminal objective. (*People* v. *Diaz, supra,* 66 Cal.2d 801, 806, 807.) Here the People concede that Troglin's criminal objective was grand theft from his wife's employer as charged in the indictment, and that the conspiracy and forgery offenses for which he was also sentenced were committed pursuant to that objective. And the People agree that ordinarily Troglin's instant contention would have merit. But it is pointed out that Troglin agreed, as part of his plea bargain, that the trial court could order sentences on the three charges to which he was to plead guilty, to "run either concurrent or consecutively as the Judge deems proper under the circumstances." Having done so, the People argue, he is bound by his bargain.

The record before us establishes, beyond any doubt, that Troglin's agreement was deliberately, intelligently, competently, and personally, made by him. We note that his plea bargain faithfully followed the guidelines of *People* v. *West,* 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409]. And on his guilty pleas the waiver requirements of *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], were fully effectuated.

It seems proper at this point to consider the effect of Troglin's plea bargain.

Without it, had the People elected to dismiss the grand theft and conspiracy counts, Troglin could have been tried, convicted and sentenced, either concurrently or consecutively, on *each* of the 17 forgery counts. (See *People* v. *Neder,* 16 Cal.App.3d 846, 853-855 [94 Cal.Rptr. 364].) Had his five prior convictions been pleaded and proved he could have been subjected to mandatory longer terms and deferred parole eligibility. By his bargain he was assured of far less than maximum punishment for his crimes; indeed, he obtained for himself parole *eligibility* after six months of prison confinement.

■ Well established is the rule that the People will be held strictly to the terms of a plea bargain made with a criminally accused. (See *People* v. *West, supra,* 3 Cal.3d 595, 610-611; *People* v. *Delles,* 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629]; *People* v. *Morgan,* 21 Cal.App.3d 33, 42 [98 Cal.Rptr. 165]; *People* v. *Cortez,* 13 Cal.App.3d 317, 333 [91 Cal.Rptr. 660]; *People* v. *Fratianno,* 6 Cal.App.3d 211, 221 [85 Cal.Rptr. 755].) It seems reasonable and just, at least where no public policy, or statutory or decisional or constitutional principle otherwise directs, that the accused also be held to his agreement.

■ We observe that the rule against multiple prosecution has no fundamental or constitutional roots; it is but "a procedural safeguard against harassment." (*Neal* v. *State of California,* 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Ward,* 30 Cal.App.3d 130, 134 [105 Cal.Rptr. 67].) An accused will not be deemed "harassed" under Penal Code section 654, where the claimed harassment "may be said to result from his own conduct." (*People* v. *Hartfield,* 11 Cal.App.3d 1073, 1078, 1080, 1081 [90 Cal.Rptr. 274].) "[T]he provisions of section 654 cannot be employed to mislead the court" (*In re Hayes,* 70 Cal.2d 604, 610, fn. 11 [75 Cal.Rptr. 790, 451 P.2d 430]; *People* v. *Hartfield, supra,* p. 1080), and when "the appellant has perpetrated a fraud upon the respondent court, he may not here be heard to say that he is being subjected to double punishment for the same act" (*Gail* v. *Municipal Court,* 251 Cal.App.2d 1005, 1008 [60 Cal.Rptr. 91]). *All participants* in a plea bargain "must conduct themselves openly and with *the utmost fairness.*" (*People* v. *Ramos,* 26 Cal.App.3d 108, 111 [102 Cal.Rptr. 502]; italics added.)

■ Here Troglin has not been harassed by the People, and it may reasonably be said that his attempted rejection of the agreement which induced the People's consent to his bargained for pleas and other advantages, is calculated to perpetrate a fraud upon the court and the People.

It is notable that upon a plea bargain's guilty plea a defendant, at his request or acquiescence, may be convicted of a lesser offense not charged, and the statutory definition of which "does not logically compose a part of the greater." This is so even though the trial court would otherwise be without jurisdiction to convict him of the offense. (See *People* v. *West, supra,* 3 Cal.3d 595, 612.) By reasonable extension of that rule, the trial court must be permitted in a plea bargain, at defendant's request or acquiescence, to impose multiple sentences resulting in lesser punishment than that to which he would otherwise be exposed.

■ Troglin's remaining complaint relates to his designation on the Adult Authority records as a "6th Termer," in spite of the fact that no prior felony convictions were pleaded, or proved, or admitted, in the proceedings leading to his present incarceration.

We note the absence of any contention that Troglin is not in fact a sixth termer, or that any of his prior convictions was for any reason

invalid, or that for purposes of parole eligibility and fixing of the term on the instant convictions, his status is other than that of a first termer.

■ The Adult Authority is charged by law with the responsibility (1) of determining "what length of time, if any, [persons committed to state prison] shall be imprisoned" (Pen. Code, § 3020), and (2) fixing the time when such convicted persons shall be allowed "to go upon parole outside the prison walls and inclosures" (Pen. Code, § 3040). In the performance of these functions it exercises a broad discretion. (*Azeria* v. *California Adult Authority,* 193 Cal.App.2d 1, 5 [13 Cal.Rptr. 839]; *In re Wilkerson,* 271 Cal.App.2d 798, 804 [77 Cal.Rptr. 340].)

In fixing prison terms and granting paroles the Adult Authority is expected to "make the punishment fit the criminal rather than the crime." (*In re Lee,* 177 Cal. 690, 692 [171 P. 958]; *In re Wilkerson, supra,* 271 Cal.App.2d 798, 803.) " 'In determining whether the privilege of parole shall be granted a prisoner, that authority is not guided solely by the good conduct of the prisoner while incarcerated. The nature of his offense, his age, his prior associations, his habits, inclinations and traits of character, the probability of his reformation and the interests of public security are all taken into consideration.' " (*In re Schoengarth,* 66 Cal.2d 295, 300 [57 Cal.Rptr. 600, 425 P.2d 200]; *People* v. *Denne,* 141 Cal.App.2d 499, 507 [297 P.2d 451].)

■ It would be manifestly unreasonable to hold, as argued by Troglin, that in fitting punishment to the criminal rather than to the crime, or in considering the prisoner's "habits, inclinations and traits of character, the probability of his reformation and the interests of public security," the Adult Authority must somehow blind itself to the most eloquent information of all, the fact of his prior felony convictions. As said in *In re Wilkerson, supra,* 271 Cal.App.2d 798, 804, "[I]t is not reasonably arguable that a body with exclusive power to determine whether or when it is in the public interest that a prisoner be returned to society lacks power to consider his social history." To the same effect, the *In re Harris,* 80 Cal.App.2d 173 [181 P.2d 433], court said (p. 178): "In determining the fitness of a man as a parole risk, many things may be considered by the parole authority. Among these are his life history, his habits, his previous associates, *and of the greatest importance, his crime record.*" (Italics added.)

We have considered Troglin's argument that the Adult Authority's "Chairman's Directive 75/20" has the effect of deferring his parole

*"eligibility"* (as distinguished from his *"suitability"*) on account of his several prior prison terms. We do not so read the directive. It establishes a "base period of confinement" for each prisoner according to the statute for the crime or crimes of which he was committed. (No complaint is made of this provision.) It then allows an adjustment of the base period for "prior felony convictions which resulted in a prison term," whether or not proved or admitted in the proceedings resulting in his commitment. The Adult Authority is then admonished by the directive that: *"Each* prior offense for which a prison term was served should be evaluated to determine whether it warrants extending the base period of confinement. Prior convictions which are old, and are followed by a subsequent period of freedom which is relatively crime free may be disregarded and not used to extend the base period of confinement. If an offense is to be used to adjust the base period of confinement, it should be evaluated in terms of its seriousness and the additional period of confinement should be added to the base period." Contrary to Troglin's contention, we find the directive to be proper, and in accordance with the authority we have cited and the opinion we have expressed. Nothing is seen in the recently decided case of *In re Rodriguez,* 14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384], which suggests a contrary conclusion.

No merit is seen in Troglin's contention of inadequate representation by his attorney in the proceedings concerning his plea bargain and guilty pleas in the superior court.

For these several reasons the application for a writ of habeas corpus is denied.

Molinari, P. J., and Sims, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied November 25, 1975.