[Crim. No. 10725.   In Bank.   May 29, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SANTOS DIAZ, JR., Defendant and Appellant.

David B. Lloyd, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

McCOMB, J.—Defendant appeals from a judgment, after trial before a jury, on verdicts finding him guilty of (a) burglary in the first degree (count two), (b) assault with a deadly weapon (count three), and (c) violation of section 288a of the Penal Code (count four).

In the course of the proceedings, defendant was found by the trial court to be a mentally disordered sex offender who would not be benefited by treatment. He was sentenced to state prison on the burglary and assault convictions, the sentences to run consecutively. He was also sentenced on the section 288a conviction, the sentence to run concurrently with the other sentences. Prior to sentencing, defendant made a motion for a new trial, which was denied. He filed a notice of appeal in pro. per. from the order denying a new trial, which is being treated as an appeal from the judgment. Counsel was appointed to represent him.

*Facts*: The victim of the offenses was Mrs. B., a resident of Santa Maria. She testified, as follows: On February 18, 1965, about 11 p.m., while in bed, she heard a noise in the house. She called out, but received no response. She arose and went as far as the door, where she was seized by a man. She was forced to lie upon a bed, threatened with a knife, and cut upon the face and neck, and a sexual act was attempted without success.

Mrs. B. struggled with her assailant into another room, where another sexual act was attempted, and an act in violation of section 288a of the Penal Code was committed. The

intruder ran from the house, but returned, felt Mrs. B.'s pulse, and covered her with a blanket.

■ *Questions*: First. *Was the evidence sufficient to identify defendant as the perpetrator of the crimes?*

*Yes.* In a police lineup and at the trial, Mrs. B. positively identified defendant as the culprit. She recognized him from his appearance and by his Puerto Rican accent, one with which she was familiar.

The crimes were committed in February 1965, but the People produced evidence of other crimes committed by defendant that had a tendency to identify him as the perpetrator of the crimes charged.

Mrs. C., also a resident of Santa Maria, testified that on November 25, 1962, about 9:30 p.m., she awakened to find defendant standing beside her bed. He told her not to make any noise if she did not want anyone to be killed. He left the house, but returned and broke a light bulb out of a porch fixture and reentered the house. Mrs. C. ran outside. A few days later at the police station she identified him as her attacker.

Angie T., also then a resident of Santa Maria, testified that in October 1962 when she was 11 years old, defendant entered her house in the nighttime, awakened her, and pressed his hands upon her throat. She screamed out his name, and he ran away. She was corroborated by the testimony of her mother, Mrs. H.

When questioned by an officer, and in his testimony at the trial, defendant denied having been in Mrs. B.'s home, and claimed to have been in his own home at the time.

The question of defendant's guilt turned upon his identification by Mrs. B. as her assailant. She identified him positively, and evidence of similar assaults upon females in the nighttime in the town of Santa Maria was admissible as tending logically and reasonably to support such identification. (See *People* v. *Peete*, 28 Cal.2d 306, 314-315 [1] [169 P.2d 924].) The identification of defendant as the assailant was legally sufficient to justify the verdicts.

■ Second. *Did the police lineup deprive defendant of due process of law?*

*No.* In a police lineup, Mrs. B. viewed defendant, two Mexicans, and a tall Negro. She immediately identified defendant. Neither of the Mexicans resembled defendant. The contention is that the lineup was unfair, because defendant was the only one in it who fitted the description Mrs. B. had given the

police. The argument on this point is clearly without merit. The manner in which the lineup was conducted went to the weight to be given to the identification of defendant by Mrs. B., not to the admissibility of her testimony. (*People* v. *Parham*, 60 Cal.2d 378, 380 [1] [33 Cal.Rptr. 497, 384 P.2d 1001].)

Third. *Did the district attorney commit prejudicial error in his argument to the jury?*

*No.* The district attorney, in argument, stated to the jury that while Mrs. B. was describing a room in her house, defendant talked excitedly to his attorney, and the district attorney suggested that this conduct indicated that defendant was familiar with Mrs. B.'s house. The incident was trivial; moreover, no objection was made to the statement, although it was one which the jury no doublt would have disregarded under a proper admonition. In the absence of an objection, which would have given the court an opportunity to admonish the jury to disregard the statement, a claim of misconduct furnishes no ground for reversal. (*People* v. *Wein*, 50 Cal.2d 383, 396 [8, 9] [326 P.2d 457] ; *People* v. *Brice*, 49 Cal.2d 434, 437 [2] [317 P.2d 961] ; *People* v. *Hampton*, 47 Cal.2d 239, 240-241 [3] [302 P.2d 300] ; *People* v. *Ney*, 238 Cal.App.2d 785, 790 [1] [48 Cal.Rptr. 265].)

Fourth. *Was defendant prejudiced by being deprived of access to one page of a police report?*

*No.* Copies of a police report were furnished to the district attorney and to defendant's attorney. One page was missing. Although this page was in the hands of a police officer during the trial, it was not produced or shown to defendant's attorney. The missing page came to his attention after the trial and was made the basis of a petition for a writ of error *coram nobis*, which was denied.

In the portion of the report contained on the missing page, it was indicated that Mrs. B. had been shown the photographs of eight named suspects. It was then stated: "Victim picked out [defendant] and Wilbert Williams mug, stating that Williams was too dark to be suspect but that there was a resemblance. [Defendant] could be suspect, but without moustache and slightly heavier. Stated she could better identify suspect by seeing and listening to his speech." The photograph of defendant shown to Mrs. B. was not a recent one.

There was no evidence that the absence of the page was

other than an inadvertence and no reason to suspect the police of having suppressed evidence. In view of the positive identification of defendant by Mrs. B., it is entirely improbable that her failure to positively identify defendant from the photograph and her statement that Williams bore some resemblance to her assailant would have shaken the jury's reliance upon her testimony.

■ Fifth. *Was the trial judge prejudiced in ruling upon defendant's motion for a new trial?*

*No.* In the judge's chambers during a discussion of evidence of other crimes that the People proposed to introduce, the judge remarked: ''We can't prejudice the defendant, although we are all satisfied of his guilt, but I don't feel that because of that I can let anything in that is to any degree outside of the law and will prejudice him in the eyes of the jury. I think the circumstances, if they are true as you have indicated, that he was a house guest in there, she is not going to make any statement that he did anything other than just look through the window. I am going to sustain your objection as to this one.''

Defendant contends that the judge was firmly of the opinion that he was guilty and could not fairly rule upon his motion for a new trial. No doubt, the judge was persuaded at that stage of the proceedings that defendant had been well identified as the perpetrator of the crimes. The trial judge ruled out some proposed evidence of other crimes, and his remarks could be interpreted to mean only that additional evidence which tended to identify defendant was unnecessary. The fact that he had formed a tentative opinion as to the sufficiency of the identification of defendant did not indicate that he was prejudiced in denying defendant's motion for a new trial. (Cf. *People* v. *Rigney,* 55 Cal.2d 236, 243 [10] [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].)

Sixth. *Was defendant subjected to the multiple punishment proscribed by section 654 of the Penal Code?*

*Yes.* The following rules are here applicable:

■ (1) Section 654 of the Penal Code prohibits the imposition of multiple punishment if either a single act or a course of criminal conduct engaged in with a single objective is charged as the basis of multiple convictions. Under such circumstances, the defendant can be punished only for the more serious offense. (*In re Ward,* 65 Cal.2d 672, 675-676 [3] [51 Cal.Rptr. 272, 414 P.2d 400].)

(2) Whether a course of criminal conduct is divisible and consequently gives rise to more than one act within the meaning of section 654 of the Penal Code is determined by the intent and objective of the actor. (*In re Ward, supra,* 64 Cal.2d 672, 676 [4].)

(3) The proscribed multiple punishment results from the imposition of multiple sentences even though the sentences are made to run concurrently. (*In re Wright,* 65 Cal.2d 650, 652-654 [56 Cal.Rptr. 110, 422 P.2d 998].)

(4) If multiple punishment has been erroneously imposed, the appropriate procedure on appeal is to eliminate the effect of the judgment as to the lesser offense or offenses insofar as the penalty alone is concerned. (*In re Wright, supra,* 65 Cal.2d 650, 656 [5]; *In re Ward, supra,* 64 Cal.2d 672, 676 [6].)

It is clear that all three crimes of which defendant was convicted were incident to a single objective. Accordingly, under the foregoing rules, he can be punished only for the most serious offense, which is burglary. He cannot be punished for the other two offenses, or either of them, even if the sentences therefor were made to run concurrently with the sentence for burglary.

The judgment is reversed insofar as it imposes sentences for assault with a deadly weapon (count three) and violation of section 288a of the Penal Code (count four). In all other respects, the judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.