[Crim. No. 13766,    Second Dist., Div. Four.    Aug. 2, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS ESPINOZA MENCHACA, Defendant and Appellant.

Grayson, Green & Vodnoy for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Rose-Marie Gruenwald and Mark A. Ivener, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was sentenced to state prison upon his conviction by the court of kidnaping for the purpose of robbery. He was also convicted of a robbery charge arising out of the same incident but no sentence was imposed for that offense in compliance with Penal Code, section 654. Appeal is from the judgment.

The single witness for the prosecution was the victim, John Lewis. During the early morning hours of September 21, 1966, he was working alone at the Western Union office on North Wilcox Avenue. Defendant walked in, pulled out a revolver, pointed it at Lewis and said "Don't make any sudden moves This is a stick-up." Defendant ordered Lewis to open the counter gate and turn around. Lewis followed his instructions and defendant put the revolver up against his back and pushed him into a back room. He then pushed him into another portion of the office, forced him to lie face down on the floor and bound and gagged him. Then defendant and a confederate, to whom Lewis could hear defendant giving instructions, took the money from his wallet and the cash on hand in the office. They left by a back door when a customer entered the front office.

Defendant had an alibi. He testified that at the time of the robbery he was working on a job for a rent-a-car outfit. His testimony was corroborated by the manager of the rent-a-car business and by a fellow employee.

The victim Lewis testified that he was actually face to face with defendant only for a matter of seconds; the rest of the

time his back was to defendant.[1] About half an hour after the robbery he made a report to the police. Sometime later at the police station, he was shown four pictures, two of one individual and two of another. He was asked "Is this the man?" Both persons in the pictures were of Mexican extraction. Lewis thought defendant was one of the two men in the pictures but was not able to identify him "for sure." The police then took him to a lineup. It was composed of four or five men. Defendant was the only Mexican. Lewis was not able immediately to identify defendant. He was not sure "until they had him turn around a couple of times." At the trial Lewis positively identified defendant and indicated he recognized his voice.

It is now established that an unnecessarily suggestive lineup constitutes a denial of due process. (*Stovall* v. *Denno,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Caruso,* 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336].) As a consequence. the admission of testimony respecting an in-court identification, without a prior determination that such testimony was not tainted by an illegal lineup identification, is error. (*Gilbert* v. *California,* 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186, 87 S.Ct. 1951]; *People* v. *Caruso, supra,* 68 Cal.2d 183, 189.)

In *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], a companion case to *Stovall* v. *Denno* and *Gilbert* v. *California,* the Supreme Court referred to classic examples of unnecessarily suggestive lineups in the following quote (at p. 232 [18 L.Ed.2d at p. 1160]): " 'In a Canadian case . . . the defendant had been picked out of a line-up of

---

[1]On direct examination, the witness indicated that he had the opportunity to observe defendant's face for "about five minutes." However, when questioned more closely on cross-examination, he changed his testimony:

"Q All right. When the individual came through this gate—well, from the time he said, he told you, 'This is a stick-up, don't make any sudden moves', and the time you went to the gate, about how long was there in a time lapse?

"A Not very long.

"Q A matter of maybe just a few seconds?

"A Yes.

"Q All right. And then what did you do, press a button to let that gate open so he could get in?

"A Yes. I released a catch and opened the gate.

"Q All right. And then he immediately turned you around, is that correct?

"A Within a couple of seconds.

"Q All right. And then from that point on your back was always to the individual with the gun, is that correct?

"A Yes."

six men, of which he was the only Oriental. In other cases, a black-haired suspect was placed among a group of light-haired persons, tall suspects have been made to stand with short non-suspects, and, in a case where the perpetrator of the crime was known to be a youth, a suspect under twenty was placed in a line-up with five other persons, all of whom were forty or over.' '' ■ Manifestly, the lineup in this case, being composed of only one person of Mexican extraction, namely, defendant, was unnecessarily suggestive and therefore constitutionally unfair.

The trial court was not operating under the above rules when it admitted the victim's identification testimony, the trial (in January 1967) having preceded *Stovall, Wade* and *Gilbert*: filed concurrently on June 12, 1967) and *Caruso* (filed January 26, 1968). At the time of the trial, the applicable rule was that, ''The manner in which the lineup was conducted affects only the weight of the witnesses' testimony, not its admissibility.'' (*People* v. *Parham*, 60 Cal.2d 378, 380 [33 Cal.Rptr. 497, 384 P.2d 1001].) Nevertheless, defendant is entitled to assert a violation of the new rules. (*Stovall* v. *Denno, supra,* 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1204]; *People* v. *Douglas,* 259 Cal.App.2d 694, 697, fn. 7 [66 Cal. Rptr. 492].)

The record fails to show that the in-court identification of defendant was based upon the victim's recollection of defendant at the time of the robbery and not on his subsequent identification at the illegal lineup. The victim testified that he listened to defendant's trial testimony and remembered his voice as the voice of the person who robbed him. But the record does not show that this identification was not related to a voice identification at the lineup.

Since the trial preceded the decisions enunciating the rule which makes the admissibility of an in-court identification depend on a finding that it was not tainted by an identification at an unfair lineup, we cannot say that the trial court necessarily reached such a determination in finding defendant guilty.

Upon retrial, the People must establish that the courtroom identification was not the fruit of the illegal lineup, or it has no case against defendant.

The judgment is reversed.

Kingsley, J., concurred.

FILES, P. J. Dissenting.—This was a trial before a court

sitting without a jury. The question is the admissibility of the victim's testimony identifying the defendant.

The victim of the robbery, Lewis, observed the defendant's face for an appreciable period of time. Defendant entered the office, stood at the counter, displayed a gun, demanded admittance through the locked counter gate, came behind the counter, escorted Lewis into "the maintainer's room," said it wasn't big enough, then escorted Lewis down the hall before binding and gagging him. Later defendant returned and went through Lewis' pockets and took his money. Lewis' testimony includes this:

"Q. Now, for about how long altogether would you say that you had an opportunity to observe this man's face altogether?

"A. About five minutes.

"Q. Approximately what would you say would be the minimum or maximum distance?

"A. The maximum distance was when he walked in. About fifteen feet.

The minimum would be about two feet across the counter."

Lewis' testimony describes 10 separate occasions when defendant spoke to him, and three occasions when Lewis overheard defendant speaking to a confederate.

In the police station Lewis tentatively identified defendant's photograph, then identified him in a lineup without any verbal suggestion by the police. In court, Lewis positively identified defendant by his appearance and his voice.

At the time this case was tried, any claimed unfairness in the lineup went to the weight, not the admissibility, of the evidence. (*People* v. *Parham,* 60 Cal.2d 378, 380 [33 Cal.Rptr. 497, 384 P.2d 1001]; *People* v. *Diaz,* 66 Cal.2d 801, 804 [58 Cal.Rptr. 729, 427 P.2d 505].) In the light of that rule defendant's counsel had the opportunity to and did cross-examine Lewis concerning the proceedings at the police station.

After hearing all of the evidence the trial court found defendant guilty. Under the law as it was understood at the time of trial, had the conscientious and experienced trial judge entertained any doubt that Lewis' testimony was his own distinct recollection of the robbery, untainted by anything which had happened afterwards, the court could not have made its finding of guilty beyond a reasonable doubt.

An unfair lineup has always been unfair. In-court identification which is based upon any kind of deception, delusion or confusion, whether created by improper police tactics or

otherwise, has never been credible evidence. This is not a rule of constitutional law, but of common sense. No court or jury, sworn to render a true verdict according to the evidence, could find a defendant guilty beyond a reasonable doubt if it entertained any doubt about the credibility of the witness upon whose word the case depended

The recent decision in *People* v. *Caruso*, 68 Cal.2d 183 [65 Cal.Rptr. 336, .436 P.2d 336], holds that the testimony of the victim is not to be received unless the prosecution proves, by ''clear and convincing evidence,'' that the victim distinctly recalls the defendant from his impressions during the robbery. In the case at bench, where the prosecution's case rested entirely upon the victim's testimony, the trial judge's finding of guilty necessarily included a finding that the People had demonstrated by clear and convincing evidence that the witness was testifying to an untainted recollection.

The *Caruso* opinion calls attention (at pp. 189-190) to the difficulty of determining whether the recollection of the witness has been tainted. This difficulty has always existed. Formerly it was exclusively the problem of the trier of the fact. Now the issue is for the court, as a prerequisite to the admissibility of the testimony.

In *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], the Court of Appeals ordered a new trial, in which the victim's testimony would be excluded because there had been an improperly conducted lineup. The Supreme Court reversed that decision, and ordered the case remanded to the trial court, with instructions to the trial judge to determine whether the in-court identification had been tainted.

The kind of finding which the United States Supreme Court asked for in *Wade*, and which the California Supreme Court prescribed in *Caruso*, has already been made in the case at bench. There is no legal reason to reverse.

A petition for a rehearing was denied August 21, 1968. Files, P. J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied September 25, 1968.