[Crim. No. 17875. Second Dist., Div. Three. Jan. 8, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK GENTRY STEARNS, Defendant and Appellant.

**180**

### COUNSEL

Robert K. Steinberg for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Respondent.

### OPINION

**ALLPORT, J.**—On August 27, 1970, an opinion was filed by this court in this case. Thereafter the court granted respondent's petition for rehearing. The following is the opinion upon rehearing.

By information the defendant was accused of the murder of Kenneth A. Lindstrand, the crime being alleged to have occurred on or about October

29, 1967. (Pen. Code, § 187.) In a trial by jury he was found guilty of murder in the first degree and the penalty was fixed as imprisonment in the state prison for life. His motion for a new trial was denied as was his motion for modification of the determination as to the nature of the offense. (Pen. Code, § 1181.) Probation was denied. The defendant was sentenced to be punished by imprisonment in the state prison for the term of his natural life. He has appealed from the judgment. He has also attempted to appeal from the order denying his "motion for a new trial and for reduction of sentence," but that order is not separately appealable and the defendant's appeal therefrom must be dismissed. (*People* v. *Ing,* 65 Cal.2d 603, 614 [55 Cal.Rptr. 902, 422 P.2d 590].)

The defendant is represented on this appeal by the same attorney who represented him at the trial. The first contention presented is that the trial court committed prejudicial error by admitting the in-court testimony of the witness Bruce Cane on the issue of the identification of the defendant as the person who committed the crime because, it is asserted, that identification was based on the defendant's appearance in a lineup so unfairly conducted as to deny him due process of law. The second contention is that the trial court erred in failing to give instructions to the jury with respect to the crimes of murder in the second degree and manslaughter. As an alternative matter, the defendant asks that this court reduce the offense to either murder of the second degree or voluntary manslaughter.

The homicide occurred on October 29, 1967, at 1:50 a.m. in a pre-Halloween party in the lobby of the Valley Country Club Apartments in San Fernando Valley. The weapon used was a .38 caliber revolver. The defendant Stearns was not arrested until April 25, 1969.

After the jury had been sworn but before evidence was received in the presence of the jury, defense counsel presented an oral motion for an order excluding the testimony of Bruce Cane, Gale [Gail] Cane, Teruko Azumane "and anyone else that the People have information of who will be testifying as eyewitnesses to the crime" and who attended a police lineup on or about April 28, 1969. The ground of the motion was that the composition of the lineup constituted a violation of the defendant's right to due process. Photographs of the lineup were received in evidence as exhibits 1, 2 and 3, respectively. The defendant had been represented by counsel at the lineup.

The People called Sergeant St. John as a witness with respect to the issue raised by the defendant's motion. He testified that the defendant was arrested on April 25, 1969. The lineup occurred on April 28, 1969. Eight men from the jail, in addition to the defendant, were placed in the lineup. The lineup was conducted in the police auditorium. When Teruko Azumane arrived, the officer told her that he had a suspect whom he believed was the

man. He did not tell her that the suspect would be in a particular place in the lineup or would be dressed in a particular manner. He did not indicate that the man had any particular physical characteristics or that he would help her point to the man in some way.

The officer further testified that he told the Canes that he had a suspect and he would like them to be present at the lineup. When they arrived he told them he had a suspect whom he believed was the man. He did not tell them what the man looked like, how he was dressed, how he combed his hair or anything about it. Neither he nor anyone in his presence told the Canes that he would help them with their selection of the man. A one-way screen was used. The witnesses were not seated in such a way that any one of them could hear the comments of another.

Defense counsel stated that the issue which he was raising was the composition of the lineup and he referred to testimony of Mr. Cane at the preliminary hearing as follows: "Mr. Cane testified at the preliminary hearing. He testified he had been shown on more than one occasion prior to the lineup photographs of the suspect; that he could not identify the suspect; that as a result of the lineup he was able to identify the suspect. Therefore, under *Caruso* [68 Cal.2d 183 (65 Cal.Rptr. 336, 436 P.2d 336)] and *Menchaca* [264 Cal.App.2d 642 (70 Cal.Rptr. 843)], should your Honor hold that the composition of this lineup is illegal due to the fact that seven of the nine people are of Latin origin, that it was not a fair lineup, that Cane's testimony was based on the lineup and not on his prior recall of this man, and especially since he could not identify the man from his own photograph with other Causacians in it, that the lineup is unconstitutional. That is the only issue, your Honor." The court immediately responded: "Now, are you asking for a ruling on that?" Upon receiving an affirmative answer from defense counsel, the court stated: "Well, I rule that it is a good lineup. In other words, I do not sustain your position. I find that as far as the lineup appears before me—I am looking at [photographs] 1, 2, and 3 in evidence—I do not hold that this lineup constitutes abuse of any prerogative on the part of the arresting officers. It would not appear to me to be unfair or an unfair lineup."

■ The governing law with respect to the matter of due process where a lineup is involved is expressed in *People* v. *Caruso,* 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]. As there stated at page 184, "before defendant may invoke an exclusionary concept he must demonstrate that the lineup 'resulted in such unfairness that it infringed his right to due process of law.' (*Stovall* v. *Denno* (1967) 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1205, 87 S.Ct. 1967].)" ■ The defendant herein sought and was given a hearing on the issue of the fairness of the lineup prior to the introduction

of evidence. The length and quality of the hearing was not enhanced by testimony of the defense attorney who was present at the time of the lineup. Bearing in mind defendant's burden of proof with respect to the fairness of the lineup (*People* v. *Caruso, supra*) and the rules applicable to appellate review of matters involving predetermined questions of fact, we conclude that there was substantial evidentiary support for the trial court's ruling that the lineup was not constitutionally inadequate and for the jury's identification of defendant as being the one who perpetrated the homicide. Further with respect to the lineup, not only was there evidence permitting a finding of fairness, but, in addition, the failure of the defense counsel who was present at the lineup to make timely on-the-spot objection pointing out the claimed unfairness, amounted to a waiver of the claim of constitutional inadequacy. Waiver under these circumstances does not necessarily involve *Ibarra*[1] error. The failure to object and testify simply indicates a calculated acquiescence by counsel in the lineup procedure and does not require a conclusion of incompetency on the part of the attorney. The theory of waiver is enhanced by the failure of that attorney to appear and testify at the hearing of the defense motion for an order excluding testimony of witnesses whose identification of defendant was claimed to have been tainted. No reason has been shown for this failure to appear. It is an idle gesture to give to a defendant the right to the presence of counsel at this stage of the criminal proceeding and not to require such counsel to take affirmative action at that time to protect the rights of the accused. Timely objection would not only tend to protect the rights of the accused, but would require or at least permit an on-the-spot correction of any unfairness existing in the original lineup procedure, thus minimizing the problem faced by the trial court and with which we are now confronted on this appeal. In the event the on-the-spot objection was valid and nevertheless went unheeded, the in-court testimony of the percipient witness attorney would be of material assistance in the prompt and effective determination of the preliminary matter. If the objection be valid and heeded, the problem would be solved *ab initio*. Since the constitutional privilege of the right to counsel was announced in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] nearly two years prior to the lineup in question, we see no valid reason not to extend the doctrine of waiver espoused in *People* v. *Armstrong,* 268 Cal.App.2d 324, 326 [74 Cal.Rptr. 37] to the situation in the instant case. The need for judicial guidelines in this area was anticipated by our Supreme Court in the case of *People* v. *Fowler,* 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643], where the court commented in footnote on page 349 as follows: "We do not address ourselves in this case to the

---

[1]*People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].

difficult and perplexing problems which can be expected to arise relative to the role to be played by counsel in the actual lineup process. (See generally Note: *Lawyers and Lineups* (1967) 77 Yale L.J. 390, 396-398; Note: *Counsel at Lineup* (1968) 63 Nw.U.L. Rev. 251, 259-261; see also *United States* v. *Allen* (D.C. Cir. 1969) 408 F.2d 1287, 1289-1290.) For the present we merely reiterate what was suggested in *Wade* relative to the purpose underlying the rule: the presence of counsel at a lineup is required in the absence of other suitable protective measures 'to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself.' (388 U.S. at p. 227 [18 L.Ed.2d at p. 1157].) We assume that counsel's function and role at the lineup itself will be determined in future cases within the context of this purpose." The requirement of meaningful affirmative action at the lineup stage appears to us to be a basic concept in the application of the *Wade* doctrine.

■ We now turn to the claim that it was error to fail to give instructions on second degree murder and on manslaughter. ■ The People concede that the general rule requires the giving of instructions on all the issues raised by the evidence and, even though not requested to do so, the trial court must, *sua sponte,* instruct on lesser included offenses. (*People* v. *Hood,* 1 Cal.3d 444, 449-450 [82 Cal.Rptr. 618, 462 P.2d 370].) ■ Second degree murder and manslaughter are offenses included in the crime charged herein. (*In re McCartney,* 64 Cal.2d 830, 831 [51 Cal.Rptr. 894, 415 P.2d 782]; *People* v. *Superior Court,* 202 Cal. 165, 167 [259 P. 943]; *People* v. *Lewis,* 186 Cal.App.2d 585, 596 [9 Cal.Rptr. 263].) ■ No instructions on these crimes were given in the instant case. The People seek to justify the failure to do so on the basis of invited error, waiver, and that the defense of alibi negated the necessity for such in this case. The record reveals that during trial defendant personally, and through his counsel, expressly requested that only first degree murder instructions be given. Under such circumstances it has been held that the doctrine of invited error bars reversal. (See *People* v. *Coogler,* 71 Cal.2d 153, 170 [77 Cal.Rptr. 790, 454 P.2d 686]; *People* v. *Graham,* 71 Cal.2d 303, 319 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Phillips,* 64 Cal.2d 574, 580-581, fn. 4 [51 Cal.Rptr. 225, 414 P.2d 353]; *People* v. *Helfend,* 1 Cal.App.3d 873, 882-883 [82 Cal.Rptr. 295].) However, we note that prior to argument of counsel and the court's charging of the jury defendant changed his mind and requested instructions on second degree murder and manslaughter. The request was denied. We hold that the failure to give such instructions under these circumstances was error. ■ The People further argue that in view of the prior waiver the giving or refusal to give the instructions was discretionary with the trial court and that since the failure to so instruct

was invited by the waiver there was no abuse of that discretion. We do not agree. We see no evidence of bad faith on the part of defense counsel. The trial court was thoroughly familiar with the record and had already given extensive consideration to the matter of these instructions. We may assume that the court was aware of its duty in this respect. The determination not to give these instructions was apparently based upon the waiver. The request for the instructions, coming at the time that it did, no doubt motivated the refusal. While the action of defendant and his counsel at this stage of the trial was no doubt an imposition upon the court, the gravity of the charge and the state of the record required that further consideration be given to the matter, despite the belated nature of the request. If, as is argued by the People, the prior waiver made the giving of the instructions discretionary, we believe it was an abuse of this discretion for the trial court not to have acceded to defendant's change of heart and acquiesced in the request for these additional instructions. To give them even at this time was a relatively simple matter. It did not involve appreciable delay in the proceedings or undue effort on the part of the court. To fail to do so subjected defendant to grave consequences. We see no valid reason for the failure to instruct the jury fully in this case. As was said in *People* v. *Wilson*, 66 Cal.2d 749 at p. 764 [59 Cal.Rptr. 156, 427 P.2d 820]: "The defendant has a constitutional right to have the jury determine every material issue presented by the evidence, and regardless of how overwhelming the evidence of guilt may be, the denial of such a fundamental right cannot be cured by section 13 of article VI of the California Constitution, for the denial of such a right is in itself a miscarriage of justice within that section. (*People* v. *Conley, supra,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911]; *People* v. *Gilbert,* 63 Cal.2d 690, 704 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Modesto, supra,* 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].) Moreover, the evidence of guilt of first degree murder in the present case is not overwhelming, and we are of the opinion that in the absence of the errors there is a reasonable probability that a result more favorable to defendant would have been reached. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)" Likewise in the instant case there exists a reasonable probability of a more favorable result to defendant in the absence of this error.

█ With respect to defendant's request that this court reduce the offense to that of murder in the second degree or voluntary manslaughter, we cannot say that there was no substantial evidence to support a finding of murder in the first degree. █ The determination of guilt or innocence and the degree of the crime are functions of the trier of fact, in this case the jury, under appropriate instructions. █ Although there was evidence to support a contrary conclusion, the possession of a revolver at a Halloween costume party, the firing of three shots and the apparently

unimpaired mental faculties of defendant permitted a finding that he had the ability to and did plan his conduct with full knowledge of the significance of his acts and thus entertained the requisite mental capacity to act with malice aforethought, premeditation and deliberation.

The attempted appeal from the order denying defendant's "motion for a new trial" is dismissed. The request for reduction of the degree of the crime is denied. The judgment is reversed.

Schweitzer, J., concurred.

**FORD, P. J.**—I concur in the reversal of the judgment. I do not, however, agree with that portion of the opinion of the majority which holds that the lineup was not constitutionally inadequate and that the failure of the defendant's attorney who was present at the lineup to make any objection at that time, pointing out the claimed unfairness, amounted to a waiver of the claim of constitutional inadequacy.

The lineup occurred about a year and a half after the homicide. At the hearing in the superior court on the issue of the fairness of the lineup, three photographs were introduced which showed the composition of the lineup. An examination of those photographs compels the conclusion that of the nine men in the lineup, in which the defendant was in the middle, none bore a reasonably similar physical resemblance to the defendant except possibly the man who stood immediately to the left of him. In my opinion, in the absence of countervailing evidence those photographs established as a matter of law that the lineup was unfair.

It is true that after the motion relating to the lineup was denied by the court, no further objection of the same nature was made in the course of the trial before the jury. But it would be to condone a denial of due process to hold that under the circumstances of this case the matter was not preserved for appellate review. (See *People* v. *Morrow,* 276 Cal.App.2d 700, 705 [81 Cal.Rptr. 201].)

That the unfairness of the lineup was of a prejudicial nature is manifest from the cross-examination of Bruce Cane, the only witness who positively identified the defendant as the killer. A portion of his testimony was: "Q. . . . Would it be fair to say that it was the lineup that finally cemented in your mind the fact that Mr. Stearns was the man you saw with the gun? A. Yes." The conclusion that the real basis of the identification was an unfair lineup is supported by the following portions of Mr. Cane's testimony on cross-examination: "Q. Calling your attention to People's 2 which is a frontal view of the police lineup, right? A. Yes. . . . Q. You on your check list identified the man as No. 5? A. Yes. Q. And No. 5, either from

left or right, turns out to be Mr. Stearns, right? A. Yes. Q. Now, do you see anyone else in that lineup with the same characteristics in your mind either height, weight, or complexion, or hair texture or matter of hair or standing gestures that is similar to Mr. Stearn's? A. (Looking at exhibit) Height. Yes. Weight, yes. . . . A. Hair. . . . Q. Going back to my question, could you point out the similarities of those in height that are similar? A. Heightwise, I guess these (indicating). Q. Heightwise you are putting everybody with the same height based on the chalk mark? A. Yes. Q. . . . Weightwise? A. You have these two (indicating). Q. The man standing next to him? A. Yes. Q. How about complexion? A. It is a little hard from the photo. Q. . . . Would you say that one, two, three, four people to Mr. Stearns' left— . . . Q. —as you look at the picture, have darker complexion than Mr. Stearns? A. Yeah, three of 'em are, yes. Q. Would it be safe to say that they are Latin Americans? A. Yes. . . . Q. Now, we are going to the left of Mr. Stearns. Would you say that the three people to his immediate left . . . are of darker complexion? A. No, two of them are. Q. The two immediately next to him? A. Yes. Q. Would you say they are Latin Americans, just looking at them? A. Or Indians. . . . Q. Now, how about the final two men over to the far left as you are looking at the picture? . . . Q. They are skinnier than Stearns, right? A. Yes. Q. They don't fit the physical description, right? A. Yes. Q. The others don't fit the complexion description? A. Right. . . . Q. We went through all the ones on weight and the ones that we found had similar weight turned out to be either a Latin American or Indian, is that correct? Now, look it over carefully. A. Yes. . . . A. Except for this one here (pointing). . . . Q. Okay. So the only one who really fits this description you gave as height, weight and complexion is Mr. Stearns? A. Yes."

The record contains no testimony to overcome the inference that the constitutionally improper lineup fatally tainted Mr. Cane's in-court identification. Upon a retrial, the trial court should be free to rehear in a plenary manner the defendant's challenge of the constitutional adequacy of the lineup and its impact upon the testimony of the witness Bruce Cane as to the identity of the killer.

In view of the unfairness of the lineup as shown by the photographs, it is not reasonable to conclude that the attorney's failure to testify was of substantial significance. Moreover, with respect to the question of waiver based on the asserted failure of that attorney "to make timely on-the-spot objection pointing out the claimed unfairness," the record is devoid of any evidence that the lineup was conducted under such circumstances that the attorney was afforded a meaningful opportunity to make any objection.

A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. (*People* v. *Carter,* 66 Cal.2d 666, 669-670 [58 Cal.Rptr. 614, 427 P.2d 214].) The conclusion that there was a waiver of the constitutional right herein involved is without support in the record.