752 P.2d 489

**The STATE of Arizona, Appellant/Cross-Appellee,**

v.

**Wesley Neal WHITTLE, Appellee/Cross-Appellant.**

**No. 2 CA–CR 3729.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 13, 1985.

---

Stephen D. Neely, Pima Co. Atty. by Kenneth J. Peasley, Tucson, for appellant/cross-appellee.

Jeffrey Bartolino and Stanton Bloom, Tucson, for appellee/cross-appellant.

## OPINION

HATHAWAY, Presiding Judge.

Defendant was tried on one count of first-degree murder and the jury returned its verdict finding him guilty of second-degree murder, dangerous nature. The state alleged that the murder charge, "or any offense included therein" was of a dangerous nature. A defense motion for new trial, alleging that the trial court improperly instructed the jury on reckless second-degree murder as a lesser-included offense, was granted. The state appeals, contending the jury was properly instructed, and urges reversal of the new trial order. We agree with that position.

The state challenges on appeal the admission of juror affidavits for purposes of defendant's new trial motion and argues that the trial court erred in granting the motion based upon its belief that the jury was improperly instructed on the "lesser-included" offense of reckless second-degree murder.

The pertinent facts reveal that the body of the victim, Pamela Woelke, was found on October 4, 1983, near Marana Air Park in Pinal County. The body, which was covered with trash and scraps of material, had a gunshot wound from a bullet entering through the left eye and passing through the head. A prescription drug bottle and bank statements found in the trash had the address 28 E. Kelso Street, Tucson, defendant's address. Tire tracks and waffle-type footprints in the dirt at the scene, damp from recent rains, were similar to tracks and prints outside the apartment at 28 E. Kelso Street.

Inquiry revealed that the victim lived in Tucson and had left an ominous-sounding note for her roommate, Teri Payette, on Saturday morning, October 1, 1983. Alarmed, Teri set out and unsuccessfully searched for Pamela. Unbeknownst to Teri, she had gone to the Bashful Bandit Bar where she spent several hours drinking. Defendant, who had arrived earlier, had been refused service because he appeared drunk, but was served upon explaining that he had just gotten up. Pamela became intoxicated and fell off her bar-

**402**

stool. She was cut off from bar service and began drinking coffee. Defendant offered to share his drink with her and was also cut off.

Shortly thereafter the two left, and when defendant was unable to start his motorcycle, two bar patrons transported the motorcycle, defendant and Pamela to defendant's apartment at 28 E. Kelso. Both defendant and Pamela were intoxicated. This is the last time Pamela was seen alive.

The next-door neighbor testified that the prior occupants of defendant's apartment had left plastic bags of trash, a couple of wooden spools, some pieces of wood and an old waterbed and mattress in the front yard. Late Saturday evening, October 1, she noticed defendant's pickup truck backed into the front yard up to the steps of the house, with the trash situated near the left-hand side of the truck. Sunday or Monday, she couldn't remember which, "everything was gone," defendant, his truck, and his two dogs. She did not see him there again.

The body was found near the Marana Air Park road on October 4, by a passer-by who was attracted to the pile of trash by the wooden spools. About that time, Teri notified the police of Pamela's disappearance. The autopsy disclosed that the fatal shot was fired "farther than two to three feet away from the face...."

## JUROR AFFIDAVITS PROPERLY RECEIVED?

■ The affidavits of three jurors admitted into evidence in support of defendant's motion for new trial indicated that they had used the reckless portion of the second-degree instructions submitted by the state to convict defendant. Rule 24.1(d), Rules of Criminal Procedure, 17 A.R.S., prohibits inquiry into jurors' subjective motives or mental processes. The trial court erred when it admitted the affidavits for purposes of the new trial motion. *State v. Acosta*, 101 Ariz. 127, 416 P.2d 560 (1966); *State v. Collins*, 130 Ariz. 280, 635 P.2d 873 (App.1981). Nor can we find the error harmless, albeit the court's minute entry explained that the new trial was granted,

"... only as set forth in Rule 21.1(c)(4) that the Court erred in the instruction of the jury on a matter of law to the substantial prejudice of the defendant in instructing the jury on the crime of reckless second degree murder...."

The court admitted the affidavits for purposes of the motion and appears to have considered them in connection therewith as urged by defense counsel and as poignantly revealed by the following exchange during the hearing on the motion for new trial:

"THE COURT: Now, are we speculating that the jurors made a reckless determination as opposed to an intentional? In other words—

MR. BARTOLINO: We're not speculating, they did. There is three affidavits indicating that's exactly what they did."

Rule 24.1(d) permits inquiry into the validity of a verdict through testimony or affidavit where allegations of jurors' misconduct are concerned. Rule 24.1(d), however, specifically provides:

"No testimony or affidavit shall be received which inquires into the subjective motives or mental processes which led a juror to assent or dissent from the verdict."

The affidavits were offered and ostensibly received for the prohibited purpose; they would have served no other. This was clearly error. See *State v. Acosta*, supra; *State v. Collins*, supra; *State v. Callahan*, 119 Ariz. 217, 580 P.2d 355 (App.1978). We believe an appropriate approach to the problem would have been to assume the jury followed the court's instructions. If those instructions were proper, all is well. If not, then a search for prejudice is required. That search, however, must not inquire into the subjective deliberative processes of the jury.

The state requests that we reverse the trial court's order granting the new trial and remand for consideration by the trial court with directions that the juror affidavits not be considered. We decline that avenue in spite of our finding of error, inasmuch as we are equally able to review the record and have have carefully done so.

We find, as discussed below, that the jury was properly instructed.

## RECKLESS SECOND–DEGREE MURDER INSTRUCTION PROPER?

Due process of law requires that an accused be advised of the charges against him and that he not face conviction of a crime of which he has no notice. This notice function is satisfied where a criminal defendant is found guilty of a lesser offense included within the crime charged. *State v. Branch*, 108 Ariz. 351, 498 P.2d 218 (1972). The trial court concluded that giving a lesser-included instruction of reckless second-degree murder was error because there was no evidence to support it.

Whether an offense is lesser included depends upon whether (1) the lesser included is, by its nature, always a constituent part of the major offense charged, or (2) the terms of the charging document describe the lesser offense. *State v. Teran*, 130 Ariz. 277, 635 P.2d 870 (App.1981). If the element which distinguishes the greater from the lesser is not in dispute, the court should not instruct on the lesser. *State v. Cousin*, 136 Ariz. 83, 664 P.2d 233 (App.1983).

Rule 13.2(c), Rules of Criminal Procedure, 17 A.R.S., provides:

> "**Notice of necessarily included offenses.** Specification of an offense in an indictment or information shall constitute a charge of that offense and of all offenses necessarily included therein."

The comments to this rule state:

> "This provision is intended as a solution to the ambiguities caused by 'open charges—i.e., charges which do not specify the degree of a crime charged—by requiring the prosecutor to specify only the most serious degree, and automatically including all necessarily included offenses within the charge. *This also clarifies the prosecutor's right to request instructions as to necessarily included offenses.* See Rule 23.3." (Emphasis added)

The comments to Rule 23.3, Rules of Criminal Procedure, 17 A.R.S., state further:

> "Under Rule 13.2(c), the indictment or information gives notice to the defendant that the trial will concern all necessarily included offenses as well as the offense specified. *Rules 13.2(c) and 23.3 make clear that the prosecutor, as well as the defendant, is entitled to an instruction on any offense for which there is evidentiary support and for which a verdict form is submitted to the jury.*" (Emphasis added)

The defendant was charged by indictment in the instant case which provided:

> "On or about the 1st through the 4th day of October, 1983, WESLEY NEAL WHITTLE, aka LESLIE WHITTLE murdered PAMELA WOELKE, in violation of A.R.S. §§ 13–1105, 13–1101 and 13–703."

An allegation of dangerous nature set forth in a separate pleading provided:

> "... that Count One, *or any offenses included therein* is of a dangerous nature involving the intentional or knowing infliction of serious physical injury upon PAMELA WOELKE and/or the use or exhibition of a deadly weapon or dangerous instrument, to-wit: a gun, in violation of A.R.S. §§ 13–604F, G and K, 13–701, 13–702, 13–801 and 13–803." (Emphasis added).

It is clear that the state may request a lesser-included offense instruction. Indeed, in a capital case the court must instruct on lesser-included offenses that the evidence will support. *State v. Clabourne*, 142 Ariz. 335, 690 P.2d 54 (1984). We must then determine whether reckless second-degree murder is a lesser-included offense of first-degree murder and if so whether the evidence justified the instruction. *State v. Celaya*, 135 Ariz. 248, 660 P.2d 849 (1983).

■ A.R.S. § 13–1105 states that first-degree murder is committed if, "[i]ntending or knowing that his conduct will cause death, such person causes the death of another with premeditation...." A.R.S. § 13–1104 states that:

> "A. A person commits second degree murder if without premeditation:

1. Such person intentionally causes the death of another person; or

2. Knowing that his conduct will cause death or serious physical injury, such person causes the death of another person; or

3. Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person."

In *State v. Walton*, 133 Ariz. 282, 650 P.2d 1264 (App.1982), it was contended that first-degree murder is indistinguishable from intentional or knowing second-degree murder. Division One of the Court of Appeals held that the legislature clearly intended two grades of murder, with premeditation as the distinguishing factor. Defendant argues that while the *Walton* court recognized that intentional and knowing second-degree murder were lesser-included offenses of first-degree murder, it also noted that reckless second-degree murder is a separate and distinct offense from that in the other two subsections of the second-degree murder statute. Examination of the opinion reveals that the *Walton* court merely took note that the defendant there did not contend that A.R.S. § 13–1104(A)(3), reckless second-degree murder, was indistinguishable from first-degree murder as contended concerning § 13–1104(A)(1), intentional, and (2) knowing second-degree murder.

Defendant here argues that second-degree murder is separated into three separate and distinct offenses. We disagree. The legislature has classified it as one offense which can be committed in three separate and distinct ways. The first two require the culpable mental state of first-degree murder, except that the mental process of premeditation is omitted. The three are assigned an equal culpability value, inasmuch as each is rated as second-degree murder and each is punishable to the same extent. Although committable in three different ways, second-degree murder is one offense. Moreover, the culpable mental state, premeditation, required to convict of first-degree murder necessarily distinguishes it from second-degree murder. Cf. *State v. Celaya*, supra; *State v. Dugan*, 125 Ariz. 194, 608 P.2d 771 (1980). See also *State v. Cannon*, 133 Ariz. 216, 650 P.2d 1198 (1982), where the court noted that: "... reckless conduct is part of the element of intent for ... second-degree murder and could serve to reduce first-degree murder to ... [this] lesser-included offense[s],...." 133 Ariz. at 218, 650 P.2d at 1200. We find that second-degree murder is, by its very nature, a constituent part of first-degree murder, that it is an included offense and that it was described by the terms of the charging documents.

■ To support an instruction for second-degree murder, a reasonable construction of the evidence should tend to show a lack of premeditation. *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982). The issue of premeditation appears to have been a matter of intense focus throughout the trial. The jury could have rationally concluded that defendant apeared to be in a perpetual state of intoxication and that premeditation was absent by virtue of his intoxication. The jury could have found an extreme indifference to human life by becoming intoxicated and using a firearm. Such recklessness is not excused by voluntary intoxication, A.R.S. § 13–105(6)(c); the intoxication becomes a part of it. Cf. *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750 (1984).

■ Defendant's suggestion on appeal that he had a fundamental right to instructions on lesser degrees of homicide is without merit in view of his position at trial that someone else had committed the homicide and the state should prove first-degree murder and prove that the defendant did it or the jury should acquit him. He entered an objection to the court's giving an instruction on reckless second-degree murder. When his objection was overruled and the instruction was given, he did not request instructions on the other lesser degrees of homicide. His tactic of wanting the case tried solely as first-degree murder relieved the court of the burden imposed by *State v. Thomas*, 112 Ariz. 261, 540 P.2d

1242 (1975), of giving, sua sponte, in a homicide case instructions on every degree of homicide. His posture in effect waived his right to other instructions. *People v. Stearns*, 14 Cal.App.3d 178, 184, 92 Cal. Rptr. 69, 73 (1971) ("Under such circumstances it has been held the doctrine of invited error bars reversal"); *People v. Jones*, 665 P.2d 127 (Colo.App.1982), aff'd 681 P.2d 504 (Colo.1984).

We find the jury was correctly instructed. The trial court's order granting the defendant's motion for new trial is vacated and this cause is remanded for sentencing.

LACAGNINA and LIVERMORE, JJ., concur.