[Crim. No. 18327. First Dist., Div. Two. Dec. 1, 1978.]

In re DONALD LEE SHETTERLY on Habeas Corpus.

### COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy and Kenneth C. Young, Deputy Attorneys General, for Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip A. Schnayerson and Mark Fogelman, Deputy State Public Defenders, for Respondent.

### OPINION

**TAYLOR, P. J.**—The People appeal from an order granting Donald Lee Shetterly's petition for a writ of habeas corpus (see Pen. Code, § 1506). The issue is whether the Community Release Board (hereinafter the CRB), in determining Shetterly's prison term pursuant to Penal Code section 1170.2, subdivisions (a) and (b), erred in enhancing Shetterly's base prison term (three years for voluntary manslaughter) by two years because of prior felony convictions which had been alleged but stricken pursuant to a negotiated plea bargain at the time Shetterly pleaded guilty to voluntary manslaughter and was sentenced under the indeterminate sentencing law. For the reasons hereinafter stated, we conclude that the CRB did not err in determining Shetterly's prison term, and therefore the order granting Shetterly's petition for a writ of habeas corpus is reversed.

In December 1974, Shetterly was charged with the murder of Stuart Mayne on August 17, 1974 (Pen. Code, § 187). The information alleged that Shetterly was armed with a deadly weapon (Pen. Code, § 12022) and

that he used a firearm (Pen. Code, § 12022.5) in commission of the murder. The information further alleged seven prior felony convictions which included three convictions for rape in 1957, two convictions for robbery in 1957, a conviction for assault with a deadly weapon in 1957, and a first degree robbery conviction in October 1966.

On February 13, 1975, Shetterly was permitted to withdraw his earlier plea of not guilty and, pursuant to a plea bargain, he pleaded guilty to the lesser included offense of voluntary manslaughter (Pen. Code, § 192, subd. 1), whereupon the special arming and use of a firearm allegations and all the alleged prior felony convictions were dismissed. On March 6, 1975, the court sentenced Shetterly to state prison for the term prescribed by law.[1]

On July 13, 1977, the CRB reviewed Shetterly's file pursuant to Penal Code section 1170.2, subdivision (a), which became operative on July 1, 1977.[2] As directed by that statute, the CRB determined Shetterly's base term of imprisonment for voluntary manslaughter under the Uniform Determinate Sentencing Act (hereinafter the DSA) to be three years (Pen. Code, § 193). The CRB did not use the prior felony convictions or the special arming and use of a firearm allegations in computing Shetterly's term of imprisonment under section 1170.2, subdivision (a).

[1]Under the indeterminate sentencing law the punishment for voluntary manslaughter was state prison "for not exceeding 15 years" (Pen. Code, § 193). The minimum term was six months (Pen. Code, § 18b), and Shetterly was eligible for parole after he served the minimum term (Pen. Code, § 3049).

[2]Penal Code section 1170.2, subdivision (a), provides: "(a) In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1170 if he had committed it after July 1, 1977, the Community Release Board shall determine what the length of time of imprisonment would have been under Section 1170 without consideration of good-time credit and utilizing the middle term of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to be true and which were imposed by the court at the time of sentencing for such felony. Such matters include: being armed with a deadly or dangerous weapon as specified in Section 211a, 460, 3024, or 12022 prior to July 1, 1977, which may result in a one-year enhancement pursuant to the provisions of Section 12022; using a firearm as specified in Section 12022.5 prior to July 1, 1977, which may result in a two-year enhancement pursuant to the provisions of Section 12022.5; infliction of great bodily injury as specified in Section 213, 264, or 461 prior to July 1, 1977, which may result in a three-year enhancement pursuant to the provisions of Section 12022.7; any prior felony conviction as specified in any statute prior to July 1, 1977, which prior felony conviction is the equivalent of a prior prison term as defined in Section 667.5, which may result in the appropriate enhancement pursuant to the provisions of Section 667.5; and any consecutive sentence."

However, the CRB determined that this was an appropriate case for imposing a longer term pursuant to section 1170.2, subdivision (b).[3]

On November 28, 1977, the CRB held a hearing pursuant to section 1170.2, subdivision (b). At that hearing the CRB determined that Shetterly had in fact been convicted of seven prior felonies and had served prison terms for those offenses. The CRB then determined that Shetterly's base term of imprisonment (three years) should be enhanced one year because of his first degree robbery conviction in 1966, and that his term of imprisonment should be enhanced another one year because of his prior felony convictions of rape, robbery, and assault with a deadly weapon in another case, for a total prison term of five years.

After exhausting his administrative remedies before the CRB, Shetterly sought habeas corpus relief in the Alameda County Superior Court, contending that the CRB had unlawfully enhanced his prison term by two years on the basis of prior felony convictions which had been stricken pursuant to the plea-bargain and which were not included in the judgment and sentencing under the indeterminate sentencing law in 1975.

---

[3]Penal Code section 1170.2, subdivision (b), provides: "(b) If the calculation required under subdivision (a) is less than the time to be served prior to a release date set prior to July 1, 1977, or if a release date had not been set, the Community Release Board shall establish the prisoner's parole date, subject to subdivision (d), on the date calculated under subdivision (a) unless at least two of the members of the Community Release Board after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a), in which event the prisoner shall be entitled to a hearing before a panel consisting of at least two members of the Community Release Board as provided for in Section 3041.5. The Community Release Board shall notify each prisoner who is scheduled for such a hearing within 90 days of July 1, 1977, or within 90 days of the date the prisoner is received by or returned to the custody of the Department of Corrections, whichever is later. The hearing shall be held before April 1, 1978, or within 120 days of receipt of the prisoner, whichever is later. The board may by resolution extend this period an additional 90 days. However, such resolution shall have no force or effect if vetoed by resolution of either house of the Legislature. It is the intent of the Legislature that the hearings provided for in this subdivision shall be accomplished in the most expeditious manner possible. At such hearing the prisoner shall be entitled to be represented by legal counsel, a release date shall be set, and the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated. In fixing a term under this section the board shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration."

The trial court granted Shetterly's petition for a writ of habeas corpus and ordered him released from custody. Execution of the order granting the writ was stayed pending appeal by the People (Pen. Code, § 1506).

Shetterly argues that the CRB violated the express provisions of the DSA and the terms of his plea bargain by enhancing his punishment on the basis of prior felony convictions which had not been proven or imposed by the trial court. This argument, however, overlooks the distinction between subdivisions (a) and (b) of section 1170.2.

■ In determining a prisoner's term of imprisonment pursuant to section 1170.2, subdivision (a), the CRB is directed to use the middle term of the offense, without considering good-time credit, "increased by any enhancements justified by matters *found to be true and which were imposed by the court at the time of sentencing* . . . ." (Italics added.) Subdivision (a) further provides that "[s]uch matters include" prior felony convictions as provided in Penal Code section 667.5. Section 667.5, subdivision (d), provides, in relevant part, that "[t]he additional penalties provided for prior prison terms shall not be imposed unless they are *charged and admitted or found true in the action for the new offense.*" (Italics added.) Thus where, as here, the alleged prior felony convictions were not imposed by the trial court, but were stricken pursuant to the plea bargain, the CRB could not use those prior felony convictions in determining Shetterly's prison term under section 1170.2, subdivision (a).

■ Section 1170.2, subdivision (b), however, does not contain similar limitations. Subdivision (b) provides that in determining whether a prisoner should serve a longer term than calculated pursuant to subdivision (a), the CRB may consider "the number of crimes of which the prisoner was convicted," or the number of "prior convictions suffered by the prisoner," among other matters. There is no language in subdivision (b) which limits the CRB to consideration of only prior felony convictions which were found to be true and imposed by the trial judge. Nor is there any reference to Penal Code section 667.5 in subdivision (b) of section 1170.2. Furthermore, subdivision (b) expressly declares, as a matter of legislative intent and policy, that in fixing a term of imprisonment under that section the CRB "shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further . . . that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration." Thus, on its face, subdivision (b) does not preclude the CRB from

considering the prisoner's prior felony convictions which were not imposed by the trial judge at the time of sentencing under the indeterminate sentencing law.

■ Shetterly argues that the CRB's action under section 1170.2, subdivision (b), violated the separation of powers doctrine (see Cal. Const., art. III, § 3). The argument, however, erroneously perceives the hearing and determination of a prisoner's term of imprisonment under section 1170.2, subdivision (b), as a "resentencing." As an administrative body, the CRB is charged with the responsibility of carrying out the mandates of the DSA. Allowing the CRB to determine the term of imprisonment of persons sentenced under the indeterminate sentencing law does not violate the doctrine of separation of powers (cf. *People* v. *Superior Court (Gonzales)* (1978) 78 Cal.App.3d 134, 140-142 [144 Cal.Rptr. 89]).

■ Shetterly argues that the CRB's action violated the principles of *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 516], in that he was deprived of his right to proof of the alleged prior convictions beyond a reasonable doubt, the privilege against self-incrimination, the right to trial by jury, and the right to confront witnesses against him. *Yurko,* however, merely holds that before the accused admits alleged prior felony convictions the record must affirmatively show that he was advised of the constitutional rights he waived by admitting the priors, and the consequences of his admissions. Here, the record fails to show that Shetterly admitted the prior felony convictions at the hearing before the CRB. Rather, the record indicates that the validity of the prior felony convictions was proven at the hearing before the CRB. In any event, for the purpose of this appeal, the parties have stipulated that the prior felony convictions were valid. Accordingly, the CRB's action did not violate the principles of *In re Yurko, supra.*

The order granting the petition for a writ of habeas corpus is reversed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied December 29, 1978, and respondent's petition for a hearing by the Supreme Court was denied January 24, 1979.