[Crim. No. 3875. Fifth Dist. Dec. 22, 1978.]

In re ANTONIO P. CORONADO on Habeas Corpus.

## COUNSEL

Quin Denvir, State Public Defender Gary S. Goodpaster and Ezra Hendon, Chief Assistant State Public Defenders, Mark E. Cutler and Richard Shapiro, Deputy State Public Defenders for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Nelson P. Kempsky, Charles P. Just and Charles J. James, Deputy Attorneys General, for Respondent.

## OPINION

**BROWN (G. A.), P. J.**—As a result of an incident which occurred on October 14, 1976, petitioner pleaded guilty to one count of voluntary manslaughter (Pen. Code, § 192, subd. 1)[1] and was sentenced for the term prescribed by law for that offense under the then existent Indeterminate Sentence Law (ISL). Though it is conceded that petitioner used a deadly weapon, a knife, in the commission of the offense, the court did not enhance petitioner's sentence for that use.

On March 29, 1977, while serving his term of imprisonment, petitioner was found guilty of possessing a crude prison-made knife by a prison disciplinary committee and was given prison discipline for that offense. He was not prosecuted on the charge.

Following the passage of the determinate sentence law (DSL) (§ 1170 et seq., eff. July 1, 1977), the Community Release Board (CRB), pursuant to the retroactive provisions of that law, ordered a serious offender hearing under the provisions of section 1170.2, subdivision (b). The CRB recalculated petitioner's sentence at 4½ years, consisting of 36 months (middle term), base term for manslaughter (§ 193), 12 months for use of a deadly weapon in commission of the offense, and 6 months for the in-prison possession of a prison-made weapon.[2]

---

[1] All code references are to the Penal Code unless otherwise indicated.

[2] The pertinent language used by the CRB's written report of the extended term proceedings stated the factors upon which it based the enhancements as follows:

"The base term set forth above is increased due to the following factors:

"II

"The prisoner used a deadly or dangerous weapon, knife, in the commission of the offense stated in I above and such was not an element of the offense itself. The facts supporting this enhancement are found to be true in this hearing, although they were not imposed by the court.

"The base term is, therefore, increased by 12 months.

"III

"The base term imposed on this prisoner is further increased due to the consideration of other factors described as follows:

"The prisoner has been found to have committed other offenses in a Disciplinary Proceeding as follows:

"Manufacture and possession of a Prison Made Weapon, as described in CDC 115 of 3/10/77, a long piece of metal tubing flattened and fashioned into a Prison Made Knife, which panel views with concern because of said behavior being consistent with behavior of commitment offense in which the prisoner used a knife to inflict the fatal wound upon the victim.

"The term is, therefore, enhanced due to the consideration of this factor by 6 months."

Petitioner contends that: (1) The 12-month enhancement was improperly added by the CRB because the court did not find the allegation to be true or impose the enhancement. (2) The CRB improperly added the 6 months enhancement for in-prison conduct. (3) The use of the in-prison disciplinary board's finding as a basis of enlarging the sentence deprived him of due process of law. (4) The CRB did not inform him in writing of "the extraordinary factors specifically considered determinative . . ." as required by section 1170.2, subdivision (b).

The retroactive provisions of the DSL contained in section 1170.2 set forth the manner in which the terms of prisoners sentenced under the ISL shall be recalculated under the DSL. Subdivision (a) of that section sets forth fixed standards for the conversion of indeterminate terms into determinate terms. We are not concerned with that subdivision. In the case at bench the CRB acted pursuant to subdivision (b) of section 1170.2 which provides in pertinent part that if: ". . . at least two of the members of the Community Release Board after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a), . . . the prisoner shall be entitled to a hearing before a panel consisting of at least two members of the Community Release Board as provided for in Section 3041.5. . . . At such hearing the prisoner shall be entitled to be represented by legal counsel, a release date shall be set, and the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated. In fixing a term under this section *the board shall be guided by, but not limited to,* the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, *the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration.*" (Italics added.)

In analyzing the authority of the CRB under section 1170.2, subdivision (b), we concluded *In re Greenwood* (1978) *ante,* page 777 [151 Cal.Rptr. 223], that "an analysis of the statutory provisions and the functions of the CRB as successor to the Adult Authority in the administration of the ISL (see §§ 5077, 5078) leads unerringly to the

conclusion that the CRB when acting pursuant to section 1170.2, subdivision (b), is not required to strictly apply the statutory principles and California Rules of Court which are binding upon trial courts in passing sentence. Further, the specific terms of section 1170.2, subdivision (a), require the CRB to apply those principles and rules only when recalculating sentences under that subdivision." (At p. 782.) Rather, as subdivision (b) of section 1170.2 specifically provides, the CRB "[i]n fixing a term under this section . . . shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, . . ."

We further concluded in *In re Greenwood, supra, ante,* that ". . . in serious offender proceedings it clearly appears from the express language of the statute that the CRB is given discretion to impose a greater term than could have been imposed by the court under the DSL." (At p. 783.)

Further germane to the issues herein is our observation in *Greenwood* that: "With respect to offenses committed prior to July 1, 1977, the ISL remains in effect. (*People* v. *Superior Court (Gonzales), supra,* 78 Cal.App.3d 134; *People* v. *Alcala* (1977) 74 Cal.App.3d 425 [141 Cal.Rptr. 442].) The authority and discretion to fix indeterminate sentences remain in the CRB even though the factors which the board should consider have been altered. That being the case the same standards of judicial review which have been applied for years under the ISL also apply to the term-fixing decisions of the CRB after a serious offender hearing, namely, whether based upon the entire record the board abused its discretion by acting arbitrarily, capriciously or without information (*In re Minnis* (1972) 7 Cal.3d 639 [102 Cal.Rptr. 749, 498 P.2d 997]; *In re Streeter* (1967) 66 Cal.2d 47 [56 Cal.Rptr. 824, 423 P.2d 976]; *In re Wilkerson* (1969) 271 Cal.App.2d 798, 803 [77 Cal.Rptr. 340]) and whether the actual sentence fixed by the board is constitutionally disproportionate to the offense (*In re Rodriguez* (1975) 14 Cal.3d 639, 653-656 [122 Cal.Rptr. 552, 537 P.2d 384]; *People* v. *Wingo* (1975) 14 Cal.3d 169 [121 Cal.Rptr. 97, 534 P.2d 1001]). In addition section 1170.2, subdivision (b) requires that 'the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated.' This requirement does not imply that the CRB must state the entire evidentiary basis for the conclusions reached in its statement of reasons in order to insulate the statement of reasons against an attack on due process grounds. (See *In re Sturm* (1974) 11 Cal.3d 258, 265-270 [113 Cal.Rptr. 361, 521 P.2d 97]; *Way* v. *Superior Court* [1977] 74 Cal.App.3d 165, 172-173.)" (At pp. 784-785.)

Applying these principles to the facts of this case, it is manifest that the CRB acted well within its discretion.

 Prior to the enactment of the DSL the Adult Authority was empowered to increase the amount of time to be served by a prisoner for prior conduct even though the acts were not pleaded and proved in court. (*In re Stanley* (1976) 54 Cal.App.3d 1030 [126 Cal.Rptr. 524].) The CRB as successor to the Adult Authority has the same power under section 1170.2, subdivision (b) when fixing the term of an indeterminate sentenced prisoner where the enhancement is assessed for use of a deadly weapon during an offense. This authority is made especially clear in this instance since using a weapon during the commission of the crime is one of the specified grounds authorizing the convening of a serious offender hearing.

By analogy the court in *In re Gray* (1978) 85 Cal.App.3d 255 [149 Cal.Rptr. 416], held that the CRB, acting pursuant to section 1170.2, subdivision (b), may impose an additional period to the base period due to the number of crimes of which the prisoner was convicted even though the trial court ordered such sentences to run concurrently. Thus the court sanctioned authority in the CRB to do an act which was in effect contrary to what the trial court ordered under the ISL. In the instant case it is an exercise of a lesser authority by the CRB to permit an assessment of an enhancement for the use of a deadly weapon upon which the trial court was silent. We find no error in the CRB's action.

Turning next to the six-month enhancement for the in-prison conduct, we likewise find no error.[3]

As has been pointed out, the CRB "[i]n fixing a term under this section . . . shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and, further, . . . shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration." (§ 1170.2, subd. (b).) Thus in setting the determinate sentence the CRB should impose a term which in its sound discretion

---

[3]Had the in-prison offense occurred subsequent to July 1, 1977, the CRB's authority would have been limited by title 15, California Administrative Code, section 2324, subdivision (a), and section 2451 to denial of good time and participation credits according to a certain fixed formula. (See Pen. Code, §§ 2931, 2932.) It is relevant to note, however, that under title 15, California Administrative Code, section 2451, subdivision (a)(4), "possession of a weapon without permission" is one of the in-prison offenses for which administrative discipline may be imposed.

it deems necessary to protect the public from repetition of crimes of violence against the person. In this regard the CRB stated in its written report of the serious offender hearing:

"The prisoner has been found to have committed other offenses in a Disciplinary Proceeding as follows:

"Manufacture and possession of a Prison Made Weapon, as described in CDC 115 of 3/10/77, a long piece of metal tubing flattened and fashioned into a Prison Made Knife, which panel views with concern because of said behavior being consistent with behavior of commitment offense in which the prisoner used a knife to inflict the fatal wound upon the victim." (See fn. 2, *ante.*)

Obviously the CRB was concerned with petitioner's propensity toward the possession and use of knives against other persons. The possession of a prison-made knife bears a reasonable relationship to a consideration of what is necessary to "protect the public from repetition of extraordinary crimes of violence against the person" under section 1170.2, subdivision (b), and was a legitimate consideration for the CRB to utilize in fixing the determinate term of an indeterminately sentenced prisoner under the facts before it. We therefore hold that the CRB did not exceed its authority or abuse its discretion.

Without citation of authority or argument petitioner contends he was deprived of his due process rights because he was not represented by counsel at the disciplinary proceeding, did not have a trial by jury and was not found guilty beyond a reasonable doubt. It is petitioner's burden to furnish a record. He has furnished no record of the disciplinary proceeding. It is also his burden to support his arguments with citations to authorities. He has cited none. We could reject the contention without more. In passing, however, we point to *In re Spence* (1974) 36 Cal.App.3d 636 [111 Cal.Rptr. 782] as fully supporting the validity of using an in-prison disciplinary committee's findings to extend a prison term.

Lastly, petitioner argues that the CRB did not inform him in writing of "the extraordinary factors specifically considered determinative" in the recalculation of his sentence. The CRB's written report (see fn. 2, *ante*) fully explicated the factors utilized in calculating the sentence. Petitioner's argument in substance is that something more is required than merely listing one or more of those factors set forth in section 1170.2, subdivision (b), which allows the CRB to set a sentence longer than that imposed under section 1170.2, subdivision (a). We disagree.

"Extraordinary factors" refers not to factors in addition to the finding of the enhancement fact but rather refers to the relationship between

section 1170.2, subdivision (a), and section 1170.2, subdivision (b). As discussed above, section 1170.2, subdivision (a), is the "ordinary" method of retroactively applying the determinate sentence law following fixed criteria. Application of section 1170.2, subdivision (b), in its stead requires a finding of an "extraordinary factor," i.e., one or more of those factors listed that allows the CRB to set a sentence longer than that which could be imposed under section 1170.2, subdivision (a), including, as in this case, use of a deadly weapon in the commission of the crime. Section 1170.2, subdivision (a), rests on determinations made by the original trial court in sentencing. Section 1170.2, subdivision (b), rests on findings made by the CRB. **(3)** The prisoner is required to be informed of those factors specifically considered determinative by the CRB and the basis on which the release date was formulated. As we have stated, this requirement does not imply that the CRB must state the entire evidentiary basis for the conclusions contained in its statement of reasons in order to meet the requirements of due process. (See *In re Sturm* (1974) 11 Cal.3d 258, 265-270 [113 Cal.Rptr. 361, 521 P.2d 97].) This is the construction of the statute that was applied by the court in *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165, 172-173 [141 Cal.Rptr. 383], when it noted that section 1170.2, subdivision (b): ". . . appears to require that such a longer term [than that required by § 1170.2, subd. (a)] be justified on the basis of certain objective facts, viz. (1) the number of crimes of which the prisoner was convicted; (2) the number of prior convictions; (3) the fact that the prisoner was armed; or (4) that he used a deadly weapon; or (5) that he inflicted great bodily harm on the victim; this is further implied by the due process guarantees written into the law, including an inmate's right to counsel and to be 'informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated.' "

Accordingly, we conclude that the CRB's written report of the serious offender proceedings which was delivered to petitioner satisfies the requirement that he "be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated."

The petition is denied.

Hopper, J., and Accurso, J.,* concurred.

A petition for a rehearing was denied January 19, 1979, and the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied on February 14, 1979.

---

*Assigned by the Chairperson of the Judicial Council.