**William McDowell LAMBDIN,
Petitioner-Appellant,**

v.

**SUPERINTENDENT, CALIFORNIA CORRECTIONAL INSTITUTION, TEHACHAPI, CALIFORNIA, Respondent-Appellee.**

No. 80–4054.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 11, 1980.
Decided Feb. 20, 1981.

William McDowell Lambdin, Tehachapi, Cal., pro se.

Ramon M. de la Guardia, Deputy Atty. Gen., George Deukmejian, Atty. Gen., Sacramento, Cal., on briefs, for respondent-appellee.

Before MERRILL and NORRIS, Circuit Judges, and QUACKENBUSH,[*] District Judge.

MERRILL, Circuit Judge:

This appeal is taken by a state prisoner from denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. Appellant contends that when the California Community Release Board (now the Board of Prison Terms) fixed his release date, it violated rights bestowed on him by the United States Constitution. The case arises under California's new determinate sentence law (DSL), and involves California Penal Code § 1170.2, the law's provision for its retroactive application to prisoners who committed a felony prior to the law's effective date, July 1, 1977.[1]

Before the DSL became effective, those convicted of crime were usually sentenced by the trial court to the "term prescribed by law," that is, an indeterminate sentence

which was deemed to be a sentence for the statutory maximum term of confinement. The actual length of sentence was left to the discretion of the California Adult Authority (or its predecessor agencies) to be fixed by taking into consideration the nature of the offense, the prisoner's behavior while in custody and an appraisal of his or her present and prospective rehabilitation. *See* Cal.Penal Code § 3020, repealed 1977 Cal.Stats. Ch. 165, § 43. Disenchanted with the lack of success this highly discretionary, nonuniform sentencing method had achieved in correction and rehabilitation, the State Legislature, in 1976, passed the DSL, which forthrightly states at the outset:

> "The Legislature finds and declares that the purpose of imprisonment for crime is punishment. This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offend-·ers committing the same offense under similar circumstances."[2]

Cal.Penal Code § 1170(a)(1).

Under the DSL the sentencing court considers two components: the base term, and "enhancement" for aggravating circumstances. Punishment constituting the base term is fixed by statute for each specific crime. Three alternative term lengths are given. The sentencing judge must impose the middle term unless he or she finds aggravating or mitigating circumstances (§ 1170(b)). If the upper or lower term is chosen, the judge must set forth on the record the facts or reasons for imposing this term. (§ 1170(c)).

Once the base term is determined, the trial judge can impose an enhancement to the sentence for reasons specific to the com-

---

[*] Honorable Justin L. Quackenbush, United States District Judge of the Eastern District of Washington, sitting by designation.

[1] The Uniform Determinate Sentencing Act, 1976 Cal.Stats. Ch. 1139, is not codified in any single title of the California codes. The major provisions pertinent to this case are found in Cal.Penal Code, §§ 667.5, 1170, 1170.1, 1170.2, as added.

[2] This purpose is reiterated in § 1170.2(b) at the point where serious offender hearings (discussed in the text below) are dealt with: "[T]he Board shall be guided by the following findings and declarations hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration."

mission of the crime, such as the use of a firearm (§ 12022.5), or being armed with a deadly weapon (§ 12022). When the conviction is for multiple offenses, consecutive terms in addition to the base term are prescribed as enhancements according to a formula provided by statute (§ 1170.1).

Provision is made by § 1170.2 for giving the benefits of the DSL to prisoners who committed felonies prior to July 1, 1977, and who would have been sentenced under the DSL had they committed the offenses after that date. This is not accomplished by resentencing. The original indeterminate sentence remains, but a release date is set within the span of the original sentence so that in the ordinary case the prison term served will be equal to the determinate sentence the prisoner would have received had he or she been sentenced under the DSL, provided that the term cannot be greater than the sentence originally imposed. The release date is fixed by the state's Community Release Board (CRB) which is guided by the provisions applying to sentencing judges under the DSL: the base term plus any enhancements, including consecutive sentences for multiple offenses (§ 1170.2(a)).

The CRB starts by calculating what the sentence would have been under the DSL with a middle base term plus enhancements. If two members of the CRB determine, after a review of a prisoner's file, that circumstances of aggravation indicate that the prisoner is a serious offender and that a longer term would be appropriate, then the term can be increased up to the maximum of the indeterminate sentence being served by the prisoner. (§ 1170.2(c)).[3] Where a release date is set under these circumstances the prisoner must be afforded a serious offender hearing (§ 1170.2(b)).

On July 26, 1976, appellant, a medical doctor, was convicted in state court of vehicular manslaughter, driving while under the influence of a drug with injury to an-

other resulting, and battery of a peace officer. His sentences, on November 19, 1976, included a state prison term for the term prescribed by law.

On January 27, 1977, appellant was sentenced to prison on a separate count of driving while under the influence of a drug with injury to another and on five counts of forging and altering prescriptions for drugs. The maximum prison term imposed was six years. The 1977 sentences were to be served concurrently with each other and with the 1976 sentence.

On July 7, 1977, under the DSL, the CRB reviewed appellant's file and conducted a hearing for the purpose of fixing a release date pursuant to § 1170.2. It concluded that appellant was a serious offender, and that the upper rather than the middle base term should be fixed for the principal offense, the 1976 conviction, because "prisoner's behavior resulted in death of victim." The base term thus fixed was 36 months in prison. The CRB added as enhancements eight months for each of three 1977 convictions, pursuant to § 1170.1(a).

Appellant unsuccessfully appealed this determination and now seeks a writ of habeas corpus. In his petition he contends that he has been denied due process of law and equal protection of the laws, and that he has been subjected to double jeopardy and to cruel and unusual punishment. From denial of the writ by the district court he has taken this appeal. We affirm.

█ In support of his contentions respecting due process, appellant argues that at his serious offender hearing he should have had a jury trial with proof presented beyond a reasonable doubt, a unanimous jury verdict and complete right of confrontation.

Under California Administrative Code § 2165, prisoners at serious offender hearings have all ordinary hearing rights, including notice; right to counsel; and opportunity to testify, to ask and answer ques-

---

**3.** The statute sets out the circumstances that would give rise to a serious offender hearing: the number of crimes for which the prisoner was convicted, the number of prior convictions, if the prisoner were armed with or used a deadly weapon when the crime was committed, or inflicted or attempted to inflict great bodily injury on the victim (§ 1170.2(b)).

tions, to produce evidence, to call witnesses in case of factual dispute, and to receive a copy of the record. Appellant enjoyed all of these rights and was present with counsel at the time of his hearing. In *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court held that rights such as these satisfy due process as to hearings for the purpose of determining a parole release date. It noted that for purposes of due process a parole release hearing should not be equated with a guilt determination, 442 U.S. at 15–16, 99 S.Ct. at 2107, nor should it be equated with a revocation of parole, where a grant of "conditional liberty" is withdrawn. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 484 (1972). Here, the state action is equivalent to release on parole; the CRB is doing no more than setting a release date under a valid prison sentence. Once validly convicted and sentenced, appellant has no constitutional right to be released before the expiration of the sentence. *See Greenholtz, supra*, 442 U.S. at 7, 9, 99 S.Ct. at 2103, 2104.

■ Appellant asserts without elaboration that by enhancing his base term with consecutive terms as to the additional offenses, the state has violated his plea bargain. We disagree. Appellant is serving a term that still is no more than could have been imposed by the concurrent sentence he received under his indeterminate sentence.[4] *In re Thoren*, 90 Cal.App.3d 704, 709, 153 Cal.Rptr. 617 (1979), dealt with this contention:

> "It would be a ludicrous exaltation of form over substance to say that CRB violated petitioner's plea bargain by fixing his sentence at six years, merely because the rationale it employed in doing so implemented a policy of treating concurrently imposed sentences as having been consecutively imposed."

The CRB explicitly followed this policy in calculating appellant's release date, and we find no error.

■ As to equal protection of the laws, appellant cannot complain that he has not been treated equally with those who committed crimes after July 1, 1977, since California was not obliged to make DSL fully retroactive as to releases. If there can be said to be any lack of equal treatment, it is between those who committed crimes prior to July 1, 1977, whose terms were routinely calculated under § 1170.2(a), and those who were denominated serious offenders under § 1170.2(b). Classifying prisoners in this manner is, however, at the heart of the California Legislature's effort to prescribe uniform terms proportionate to the seriousness of the offense, § 1170(a)(1), in an effort to protect the public from the "repetition of extraordinary crimes of violence" (§ 1170.2(b)). Since the serious offender classification in § 1170.2 is so substantially related to the legitimate object of the DSL, it constitutes no denial of equal protection to one so denominated. *See Johnson v. Robinson*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1971).

■ Appellant contends that the serious offender determination placed him in double jeopardy in violation of the Fifth and Fourteenth Amendments. He is in error. As we have noted, appellant was not resentenced. Instead, his release date was fixed by the CRB and, as fixed, was wholly consistent with his original sentence.

We find no merit in appellant's contention that the serious offender determination subjected him to cruel and unusual punishment.

Appellant contends that in certain respects CRB failed to comply with state law or violated provisions of the State Constitution. No federal question is presented by these contentions, and they are not cognizable in federal habeas corpus proceedings.

Judgment affirmed.

---

4. Convictions on four of the counts of forging and altering prescriptions for drugs were considered by the CRB as one offense related to appellant's drug problem. These counts did not figure in enhancement.