Henry Figueroa GUZMAN,
Petitioner-Appellant,

v.

P. J. MORRIS, Warden,
Respondent-Appellee.

No. 79–2706.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 5, 1981.

Decided April 16, 1981.

John F. Bowman, Bowman & Bowman, Fair Oaks, Cal., on brief, for petitioner-appellant.

William George Prahl, Sacramento, Cal., on brief, for respondent-appellee.

Before WALLACE and SNEED, Circuit Judges, and CLAIBORNE,* District Judge.

WALLACE, Circuit Judge:

Guzman appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. He claims that the recalculation of his date of release from prison under the retroactivity provisions of California's Determinate Sentence Law (DSL) violates the terms of his plea bargain and thus deprives him of due process. He also raises several other constitutional objections to this procedure. We affirm.

I

In September 1975, Guzman was charged by information in the state court with violations of Cal.Penal Code §§ 211 (robbery), 489 (grand theft), 245(b) (assault with a deadly weapon against a police officer), and 12021 (possession of a concealable weapon). The information also alleged five prior felony convictions against Guzman, and further alleged that he used a firearm in the commission of the robbery. Pursuant to a plea bargain, Guzman pled guilty to the robbery charge and admitted having used a firearm in the commission of the robbery in violation of Cal.Penal Code § 12022.5. On motion of the district attorney, in accordance with the plea agreement, the court dismissed the other charges and the prior felony allegations.

At the time Guzman entered his plea, California's Indeterminate Sentencing Law (ISL) was still in effect. Under that law, criminal statutes contained minimum and maximum sentences. The judge sentenced convicted criminals to "the term prescribed by law." The determination of the length of time the prisoner would actually serve, within the statutory bounds, was an administrative task performed by the California Adult Authority. Thus, the judge gave Guzman consecutive sentences for the terms prescribed by law for first degree robbery and for the use of a firearm in the commission of that offense. The term prescribed by law for each of those offenses was five years to life imprisonment. Therefore, Guzman's ISL sentence was ten years to life.

On July 1, 1977, California's DSL went into effect, replacing the ISL. Cal.Penal Code §§ 1170 *et seq.* The purpose of the DSL is to achieve uniformity in sentencing. The DSL seeks to achieve this by requiring that all persons convicted of the same crime be given the same sentence, subject only to certain aggravating, mitigating, or enhancing circumstances. Cal.Penal Code § 1170(a)(1), (b). Criminal statutes under the DSL now contain three "base" sentences. For example, the robbery statute under which Guzman was convicted now provides for sentences of two, three, or four years. The DSL requires the judge to impose the middle of the three sentences, unless he finds "circumstances in aggravation or mitigation." Cal.Penal Code § 1170(b). If such circumstances exist, the longer or shorter statutory sentence will be imposed. In addition, sentences may be increased if consecutive sentences are imposed, or enhancements are proved. Cal.Penal Code § 1170.1. *See generally In re Gray*, 85 Cal.App.3d 255, 259, 149 Cal.Rptr. 416, 418 (1978).

In keeping with the policy of uniform sentencing, the DSL further provides that the Community Release Board (CRB),[1] the successor to the Adult Authority, must reset the prison terms for prisoners who had been sentenced under the ISL. The CRB, in recalculating the prisoner's term, must use "the middle term of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to be true and which were imposed by the

* Honorable Harry E. Claiborne, United States District Judge, District of Nevada, sitting by designation.

1. In 1979, the Community Release Board was renamed the Board of Prison Terms. Because all actions of this agency in the case before us occurred before the name change, we shall refer to it as the Community Release Board in this opinion.

court at the time of sentencing for such felony." Cal.Penal Code § 1170.2(a). The CRB must then fix the parole date of the prisoner on the date calculated under section 1170.2(a), unless two members of the CRB determine that the prisoner should serve a term longer than that calculated. In that event, the CRB must give notice and a prompt hearing to the prisoner. The prisoner has the right to counsel and to be informed in writing of the reasons for the increase in his term over that computed in section 1170.2(a). In reaching its determination, the CRB is "guided by, but not not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances" after the effective date of the DSL, and by "the necessity to protect the public from repetition of extraordinary crimes of violence against the person." Cal.Penal Code § 1170.2(b). In no event, however, may a prisoner sentenced under the ISL receive a longer term under the DSL than he could have served under the ISL. Cal.Penal Code § 1170.2(c).

The CRB elected to convene such an extended term hearing in Guzman's case. The CRB determined that Guzman should serve seven years from the date of his conviction, rather than the five years that he would have served without the extended term hearing.[2] The CRB arrived at its seven year determination in the following way. First, it employed the four year upper sentence option for robbery, rather than the three year middle term. It employed the upper term because it found aggravating factors, pursuant to Cal.Penal Code § 1170(b) and Cal.Rules of Court 421. Specifically, the CRB found four aggravating factors: (1) Guzman had served prior prison terms, including two terms for second degree burglary and one for larceny; (2) as a separate ground, Guzman had numerous convictions; (3) Guzman had been on parole when he committed the crime; and (4) Guzman's prior performance on parole had been

unsatisfactory. *See* Cal.Rules of Court 421(b)(2)–(5). The CRB observed that any of these four aggravating factors individually would have been sufficient to warrant the use of the upper term as a base. The CRB then enhanced the term by two years because Guzman used a firearm in the commission of the robbery offense and by an additional year because he had served a prior prison term for assault with intent to murder and robbery in the first degree, Cal.Penal Code §§ 211, 217.

Thus, Guzman's DSL term would have been seven years. Including credit for good behavior, his release date was initially set for November 21, 1980, and later reset for October 31, 1980. Guzman's release date under the ISL as subsequently determined would have been April 2, 1982.

In April 1979, Guzman filed a petition for a writ of habeas corpus with the California Supreme Court, which was denied in May 1979. In June 1979, he filed a petition for a writ of habeas corpus in the district court. The district court denied the petition, and Guzman appeals.

## II

### A.

A person in state custody may petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. We may not consider, as independent grounds for habeas corpus, arguments that do not raise federal claims. Although Guzman's arguments are interrelated, it appears that he is asserting two "procedural" errors of state law as independent grounds for his federal habeas corpus petition. These two grounds are that the CRB improperly considered Guzman's prior felony convictions twice in imposing two different one year increases to his sentence, and that the CRB increased Guzman's pun-

2. We assume that the five year figure, which is admitted by Guzman and not challenged by the State, was reached by taking the three year middle base term for robbery and enhancing it by two years for the use of a firearm. That a firearm was used was found by the court, and the enhancement was imposed at the time of sentencing. *See* Cal.Penal Code § 1170.2(a).

ishment beyond what it would have been under the ISL, in violation of Cal.Penal Code § 1170.2(c), by imposing liability for the prior convictions that were not considered when the ISL sentence was rendered. Our federal habeas corpus jurisdiction does not extend to these alleged violations of state law. We may consider his arguments, however, to the extent that they substantiate his federal constitutional claims.

### B.

Guzman's major contention is that the CRB, in calculating his DSL prison term, should not have considered his prior felony convictions because those convictions had been dismissed pursuant to his plea bargain. For this reason, he claims that his plea bargain has been violated, thus depriving him of due process. *See Stone v. Cardwell*, 575 F.2d 724, 726 (9th Cir. 1978). We disagree.

■■■■ Guzman's argument rests on the premise that he was "resentenced" under the DSL. Guzman, however, was not resentenced, but remained subject to the ten years to life sentence imposed pursuant to the ISL. *Lambdin v. Superintendent*, 640 F.2d 245, at 247 (9th Cir. 1981). The section 1170.2 procedure is designed to fix release dates for prisoners who were sentenced under the ISL for the purpose of making release dates of prisoners sentenced under the two different laws consistent. *In re Shetterly*, 86 Cal.App.3d 889, 895, 150 Cal. Rptr. 603, 606 (1978); *People v. Willis*, 84 Cal.App.3d 952, 955 n.1, 149 Cal.Rptr. 301, 303 n.1 (1978). There is no denial of due process when an administrative board considers prior convictions in setting a release date prior to the maximum term of the sentence. *Dorado v. Kerr*, 454 F.2d 892, 897–98 (9th Cir.), *cert. denied*, 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed.2d 188 (1972). *See also Wyatt v. United States Parole Comm'n*, 571 F.2d 1089, 1091 (9th Cir. 1977). When Guzman agreed to plead guilty, he faced a life sentence, and his opportunity for parole

was in the hands of the Adult Authority. The Adult Authority could have considered his prior convictions in setting that parole date, even though the prior convictions were not pleaded and proved. *In re Coronado*, 87 Cal.App.3d 788, 793, 151 Cal.Rptr. 433, 436 (1978). Thus it is clear that Guzman could not have complained that his plea bargain was breached if the Adult Authority had considered his prior convictions in setting a parole date under the ISL. Therefore, Guzman cannot now complain that his plea agreement was violated because the CRB considered his prior convictions in calculating his release date. *Lambdin v. Superintendent, supra*, at 247.

■■■ Our holding with respect to Guzman's claim of plea bargain violation is unaffected by the fact that his release date is earlier under the DSL than it would have been under the ISL. Our decision is not based on the lack of prejudice to Guzman, *see Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), but on the lack of violation of a plea bargain. A plea bargain is a contractual matter. *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979). We agree with the California Court of Appeal that, under California law, plea bargains are merely agreements as to the disposition of the case, and that the prison sentence involved is no part of that contract. Rather, the length of the sentence is an "unstated, uncontrollable, peripheral expectation as to which both sides [take] a gamble." *Way v. Superior Court*, 74 Cal.App.3d 165, 180, 141 Cal.Rptr. 383, 393 (1977) (footnote omitted). It is no violation of a plea agreement that the new sentencing authority considered prior convictions that the prosecutor had dismissed in setting a release date when the old sentencing authority could have done the same thing.[3]

### C.

Extensive discussion is unnecessary to dispose of Guzman's other arguments.

---

**3.** We observe that Guzman was represented by counsel at his hearing. He apparently did not

then, and he does not now, claim that he had not previously been convicted of felonies.

Guzman claims that even if his prior convictions could be considered, the CRB violated his due process rights by twice using the same prior convictions: to impose the upper base term of his sentence and then to aggravate the total sentence. We do not reach the issue because Guzman's assertion is factually incorrect. The CRB used different prior convictions to impose the upper base term and to aggravate the sentence.

Next, Guzman claims violations of his due process and equal protection rights by the application of the DSL by a non-judicial body to increase his sentence after his prison term had begun. We repeat that Guzman was not resentenced by the CRB, but merely had his release date redetermined. The delegation of this kind of authority to a non-judicial body is well-settled. *Bennett v. California*, 406 F.2d 36, 38 (9th Cir.), *cert. denied*, 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969). *See also United States v. Lewis*, 447 F.2d 1262 (D.C.Cir. 1971). Further, we are unable to see how Guzman can argue that his term was increased, when in fact his release date was two years earlier than it would have been under the ISL. In addition, his total term could have been no more than seven years under the DSL, but could have been for life under the ISL.

Guzman's other arguments are totally without merit. There is no violation of the double jeopardy clause, because Guzman simply was not put in jeopardy twice for the same offense. *Lambdin v. Superintendent, supra*, at 248; *Fernandez v. Klinger*, 346 F.2d 210, 212 (9th Cir.), *cert. denied*, 382 U.S. 895, 86 S.Ct. 191, 15 L.Ed.2d 152 (1965). The DSL is neither an ex post facto law[4] nor a bill of attainder as it applied to Guzman because he suffered no additional punishment as a result of the enactment of

the law. In fact, as we have observed, his punishment was reduced by the new law.

AFFIRMED.

4. Our opinion on the ex post facto law issue is not changed by the Supreme Court's recent opinion in *Weaver v. Graham*, — U.S. —, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), which was decided subsequent to submission of this case. There, the Supreme Court held unconstitutional as an ex post facto law a Florida statute reducing the amount of credit for good behavior available to state prisoners. The Court empha-

sized that the Florida statute reduced the opportunity of a prisoner incarcerated before the effective date of the statute "to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." *Id.* 101 S.Ct. at 966–968. Guzman, however, has made no showing that the DSL makes his punishment more onerous than his punishment under the ISL.